O. L. NEYLAND V. HERMAN BROWN ET AL.

No. 8013. Decided March 17, 1943.
Rehearing overruled April 28, 1943.
Second motion for rehearing granted in part
and in part overruled June 9, 1943.
(170 S. W., 2d Series, 207; 172 S. W., 2d Series, 89.)

254

*Hardy Hollers,* of Austin, *Johns, McCampbell & Snyder,* of Corpus Christi, *Lawler, Woods & Childress,* of Houston, for petitioner, O. L. Neyland.

Since petitioner Neyland, as employee, owned no interest in the Saxet Company stock and had no right to be consulted

about its acceptance, nor upon what terms it should be sold or disposed of, he was not responsible for nor chargeable with the loss which respondents, his employers and sole owners of the stock, might suffer by retaining the stock some months before selling it; but on the other hand he was entitled to an accounting in money on the basis of the value at which the stock had been accepted by respondents, which was less than the market value at the time. And the jury having found that respondents had received said stock "in lieu of the payment" of a fixed amount for a named job, and had credited the receipts and revenues of said job with such sum as representing the value of the stock, with the intention that they should own it to the exclusion of petitioner, it was error for the Court of Civil Appeals to conclude, upon such finding, that respondents had impliedly agreed to account to petitioner in cash for one-half the value at which such stock was so received by them. Hoy v. Hoy, 152 Minn. 206, 188 N. W. 263; Swaney v. Derrager, 281 Mich. 142, 274 N. W. 741; 2 Am. Jur. 237; 39 C. J. 178; Annotations in Ann. Cas. 1915B, 169.

*Edgar Monteith* and *T. J. O'Brien,* both of Houston, *Hart & Brown* and *James H. Hart* and *Homer DeWolf,* all of Austin, for respondents, Herman Brown and associate member of the firm of Brown & Root, Inc.

In rebuttal of the above proposition cited: Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79; Raynes v. Germany, 144 S. W. (2d) 981; Cox v. Shannon, 141 S. W. (2d) 412.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The parties to this suit are O. L. Neyland, plaintiff in the trial court, and the partnership of Brown & Root, the individual members thereof, and Brown & Root, Inc., successors to the partnership, defendants in the trial court. Both the plaintiff's and the defendants' applications for writ of error were granted, the result of which is that each party is both petitioner and respondent here. We shall refer to the plaintiff as Neyland and the defendants collectively as Brown & Root.

In its general aspect the suit is one for an accounting, but more specifically stated it is a suit for the recovery by Neyland of specific amounts claimed to be owing to him by Brown & Root under ten separate and distinct contracts, relating to ten

separate construction jobs superintended by Neyland for Brown & Root. As stated in one of the briefs, although the suit presents many independent grounds of recovery and defenses, they all stem back to an oral contract made April 26, 1929, at Edinburg, Texas, between Herman Brown for Brown & Root, as employer, and Neyland, as employee. Prior to the making of that contract Brown & Root had been awarded a contract by the State Highway Commission to build eleven miles of road in Kerr County. The Edinburg contract was made with reference to the Kerr County contract. The terms of that contract material to the questions presented here for decision were not put in dispute. In substance and effect they were that Neyland should be field superintendent of the road construction work and the performance generally of Brown & Root's contract with the State. He was to be allowed $200.00 per month, charged against the job, and was to receive one-half the profits realized therefrom. Brown & Root were to furnish all money, pay all bills and keep the books. Neyland was to o.k. all expenses for labor, material, etc., used on the job, and Brown & Root were to charge to the job as costs thereof only items having Neyland's o.k., with the exception of premiums on surety bonds and workmen's compensation.

During the course of the construction of the Kerr County highway Neyland procured for Brown & Root nine other contracts for nine other different construction jobs and was employed to superintend each of such jobs on the same terms as those embodied in the Edinburg contract. All of the work was completed in about two years. The different causes of action asserted in this suit grow out of the performance of those several construction contracts. In the trial court judgment was rendered in part upon the jury's verdict and in part non obstante veredicto in favor of Neyland against Brown & Root for approximately $94,000.00 besides interest. The Court of Civil Appeals on original hearing reversed and remanded the case generally but on rehearing affirmed the trial court's judgment in part, reversed and rendered it in part and reversed and remanded it in part. 161 S. W. (2d) 833.

As noted above, each party made application for writ of error and each was granted. The parties agree that each asserted cause of action is severable from the others and we shall therefore consider the various causes of action separately. Our order of consideration will be to follow the order of presentation in the application of Neyland and then the additional questions presented in the application of Brown & Root.

## SAXET COMPANY STOCK TRANSACTION

While Neyland was acting as superintendent of the construction of the State Highway under the Edinburg contract he negotiated for Brown & Root a contract with W. L. Moody III for the construction of a concrete dam across the Johnson Fork of the Llano river in Kimball County, on property belonging to Moody. It was planned that the dam would cost about $35,000.00. By the contract for the construction of such dam Brown & Root were given the option to be exercised by June 25, 1930, to accept in settlement thereof the equivalent in common stock of 700 shares of the preferred stock of Saxet Company. The option was not exercised by Brown & Root. After the original contract was made Moody decided to enlarge the plan and the final cost of the construction of the dam in its enlarged form was approximately $64,000.00. Other small construction jobs were performed by Brown & Root for Moody during the period, and after the completion of all of them Brown & Root sent to Moody a statement as prepared by Neyland of the amount owing with the request that same be paid. After about thirty days Brown & Root again called upon Moody for its payment by telegram. In response thereto Moody mailed to Brown & Root a certificate for 3,750 shares of the common stock of Saxet Company stating in the letter of transmittal that same was sent in payment for the construction of the dam in accordance with the terms of the contract. This certificate was received by Brown & Root in Austin about February 19th or 20th, 1931, and on or about April 1st thereafter they sent Neyland to Galveston to effect a settlement with Moody. Neyland effected a full settlement with Moody's representative, J. F. Reed, by the terms of which Brown & Root were to receive 3750 shares of Saxet stock valued at $10.00 per share, and a check for $30,758.61. As evidence of such settlement Neyland executed and delivered to Reed a receipt in full for the stock and the check, signing same "Brown & Root, by O. L. Neyland, Authorized Agent." Thereafter, on April 7, 1931, Brown & Root credited Moody's account with 3750 shares of Saxet stock at the value of $37,500.00.

An unsigned copy of a letter was offered in evidence dated April 2, 1931. The letter was addressed to Mr. John F. Reed, Galveston, Texas, and concluded as follows: "Yours very truly, Brown & Root, by _____, Authorized Agent." By the terms of that letter Reed was granted an option of ninety days within which to purchase 3750 shares of Saxet stock at $11.00 per share. The option was conditioned as follows: "If

at any time prior to noon, April 15th, 1931, we have made a bona fide sale of said 3750 shares of the common stock of The Saxet Company to you and Mr. O. L. Neyland for a consideration of $10.00 per share, less transfer stamps and taxes, then, and in that case this option is voided." The original of the letter was not produced. Herman Brown testified that Neyland brought a copy of the letter from Galveston upon his return with the stock and the check. Neyland denied this and testified that he knew nothing of this option letter. The jury found that Neyland knew of this option letter, but there was no issue submitted calling for a finding with reference to whether or not he signed same.

On April 15, 1931, Brown & Root in answer to a telegram from Neyland notified him of their willingness to sell the stock to him and Reed at $10.00 per share, the price named in said option letter, but Neyland did not exercise his option to purchase same. Reed declined to forfeit his ninety day option and thereafter the stock became practically worthless. It was finally sold to Henry Brown, one of the stockholders in Brown & Root, Inc., for a sum slightly in excess of $1,100.00. Neyland claims that he should be paid one-half the sum of $37,500.00, the price at which such stock was accepted, while it is the claim of Brown & Root that payment should be one-half of the price received by them in the sale of such stock.

The transaction with reference to this matter are shrouded in uncertainty. Sharp conflicts appear in the testimony and the special issues submitted to the jury were in the main with reference to undisputed matters having no particular relation to the real controversy. By his pleadings Neyland sought to recover on this item upon allegations that on or about the 19th day of February, 1931, Brown & Root received and accepted from Moody 3750 shares of the stock of Saxet Company and credited the receipts and revenues of the jobs performed for Moody with $37,500.00, the agreed valuation of said stock. He completely failed to establish that ground of recovery, and does not now contend that Brown & Root accepted said stock at that time. In his application for writ of error it is stated that the undisputed evidence shows that this stock was received by Brown & Root and credited on the Moody account, together with a cash remittance of $31,768.51 on April 7, 1931. That date was shortly after Neyland was in Galveston effecting a settlement with Reed, the representative of Moody, and was the date when Brown & Root claim to have accepted same.

■ Alternatively, Neyland pleaded that Brown & Root impliedly agreed to credit his account with one-half of $37,500.00, the price at which the Saxet stock was taken. That fact was disputed by Herman Brown and no special issues were submitted or requested to be submitted to the jury with respect thereto. Such ground of recovery was therefore waived. Ormsby v. Ratcliffe, 117 Texas 242, 1 S. W. (2d) 1084; Wichita Falls & Oklahoma Ry. Co. et al v. Pepper, 134 Texas 360, 135 S. W. (2d) 79.

■ Another alternative plea was that on April 2, 1931, Brown & Root assumed the right of control and disposition of said stock to the exclusion of Neyland by granting an option to Reed for the purchase of such stock at $11.00 per share without the consent or knowledge of Neyland. The jury found that Neyland had knowledge of such option, but there is no finding as to who granted it. The trial court's judgment cannot, therefore, be upheld upon that ground. We agree with the Court of Civil Appeals that, if Neyland granted that option, thereby depriving Brown & Root of the right to dispose of the stock during its life and if, during that period, loss resulted from a depreciation in the value thereof, it would be manifestly unjust to permit Neyland to recover as profits the value of the stock as same was accepted by him on April 2nd.

Further alternative pleadings were that Brown & Root kept the stock in their exclusive custody and control and failed and refused to attempt to sell same until the month of August, 1931; that such stock should have been controverted into money at the highest market price as soon after the receipt thereof by Brown & Root as possible. This pleading ignores the fact of the option granted to Neyland and Reed and the further option granted to Reed. It seems to be based upon bad faith or negligence, or both, on the part of Brown & Root, but no special issues were submitted, or requested to be submitted, with respect thereto. A final alternative plea was that the sale made to George Brown, one of the stockholders of Brown & Root, Inc., was simulated, but that ground of recovery was also waived by the failure of Neyland to request the submission of any issue with respect thereto.

Concerning the issues submitted on this ground of recovery the opinion of the Court of Civil Appeals states:

"Three issues, other than those relating to the option of Neyland and Reed to purchase said stock, were submitted to the jury in answer to which they found: 1. That Brown & Root

'received' from Moody 3,750 shares of said stock 'in lieu of the payment of $37,500 by said W. L. Moody III for the performance of the Moody dam job' (special issue 10) ; 2. That they 'credited the receipts and revenues of the Moody dam job with the sum of $37,500.00 as representing the value of 3,750 shares of Saxet stock' (special issue 21) ; and 3. That they did so 'with the intention that Brown & Root, Inc., should own such stock to the exclusion of Plaintiff Neyland' (special issue 22)."

■ Not one of these issues submitted a really controverted question. Brown & Root admittedly received the stock in lieu of the payment of $37,500.00. They also credited the receipts and revenues of the Moody dam job with that amount. Under their own theory of the case they so credited it with the intention that they should own it to the exclusion of Neyland. At the time Neyland contended that he was not an employee, but that he was engaged with Brown & Root in a joint enterprise. Under his theory he owned an interest in this stock. Under Brown & Root's theory he did not. Viewed in that light, the finding was clearly not one in support of Neyland's theory of recovery. We are unable to say that any of the submitted issues represented an effort to submit any ground of recovery relied upon by Neyland in his petition. We cannot therefore presume findings which would support the judgment of the trial court. The Court of Civil Appeals held as to this item that the judgment was not supported by the pleadings or the findings, and we agree with that conclusion.

■ The most difficult question in connection with this transaction is that presented by Brown & Root. They forcefully press the argument that it is our duty to render judgment here that Neyland take nothing by his suit as to this item. We have concluded, however, after considering the matter in all of its aspects, that this phase of the case should be retried, as ordered by the Court of Civil Appeals. There is uncertainty surrounding the whole transaction, which is emphasized by the fact that Brown & Root felt that some of the issues found by the jury might have been favorable to Neyland's right of recovery and accordingly made a motion in the trial court for judgment non obstante veredicto with respect thereto. These considerations in the light of the record as a whole have led us to the conclusion that the rights of the parties have not been so clearly established that we should now terminate the litigation. On the other hand, we are convinced that the ends of justice would better be served by a remand.

ITEMS AGGREGATING $34,175.37 NOT BEARING THE O.K. OF NEYLAND

The place of performance of each of the various jobs in which Neyland served as superintendent of construction was within a few miles of the place of performance of the original highway job in Kerr County. Men were transferred from one job to the other under Neyland's direction. All items of material and labor entering into these jobs were approved by Neyland and the invoices sent to the office of Brown & Root in Austin. Obviously, they grew into a large volume. During the period intervening between the filing of the suit and its trial the Austin offices of Brown & Root were moved to a new location. In the process of moving these offices many of the old records and original invoices bearing Neyland's o.k. were lost and destroyed by fire and could not be produced upon the trial. Neyland verified from memory items aggregating $14,000.00, but failed to verify items aggregating $34,175.37. As to these items it was Neyland's contention that they should be rejected as legitimate items of cost, and that in arriving at a final settlement only items for which Brown & Root could produce invoices and statements bearing his o.k. should be charged as construction costs. Neyland's exact position with reference to these items can best be reflected by the following testimony quoted in the opinion of the Court of Civil Appeals.

"Q. Everything that entered into those jobs, whether it be labor or material or something else used in the performance of them, received your approval? A. That is right.

"Q. And is a proper charge against those jobs. A. That is correct.

"Q. Well, now, is it your position, Mr. Neyland that if Brown & Root at this date can not produce invoices which have your o.k. on them for materials which entered into those jobs but for which they paid, that they are not entitled to a credit for the amount so paid by them? A. That is my position.

"Q. It is your position that although they paid for labor which actually went into these jobs or bought and paid for material which was used in the construction of these jobs, if they can not today produce a bill o.k'd by you or a check signed by you, that they are not entitled to credit? A. Yes, sir.

"Q. That is your position, A. That is right'."

The contention of Brown & Root was that each and every item charged as construction costs of the several jobs bore Neyland's o.k. and was therefore a proper charge. Much testimony was adduced with reference thereto. The fact questions

thus raised by the evidence were submitted to, and answered by the jury as follows:

"SPECIAL ISSUE NO 39. ' Do you find from a preponderance of the evidence that Plaintiff Neyland used all of the materials, equipment, labor and expenses (excluding overhead expenses) which are charged on Brown & Root's books as a direct cost of performing the several jobs in which Neyland claims an interest?

"Answer 'Yes' or 'No.'

"ANSWER: Yes.

"SPECIAL ISSUE NO. 40. Stated in money, how much, if any, of the charges on Brown & Root's books for materials, equipment, labor and expenses (excluding overhead expenses) against the jobs in which Neyland claims an interest, do you find from a preponderance of the evidence represents materials, equipment, labor and expenses (excluding overhead expenses) which were not actually used in performing said several contracts, if any such charges there were? Answer in Dollars, if any, and Cents, if any.

"ANSWER: None."

■ Upon motion of Neyland for judgment non obstante veredicto the trial court set aside the above answers and disallowed these charges in toto. The Court of Civil Appeals held that the trial court was unauthorized to disregard these jury findings and accordingly reversed that portion of the trial court's judgment decreeing that none of the items entering into the aggregate of $34,175.37 be charged as construction costs and rendered judgment in accordance with the verdict of the jury. As we understand the grounds upon which the trial court granted the motion to render judgment non obstante veredicto they rest upon what we conceive to be an erroneous conception of the authority of the trial court to render judgment non obstante veredicto. The authority to render that character of judgment is conferred by statute (Vernon's Civ. Stat. Art. 2211) and exists only in a case in which a directed verdict would have been proper. To our minds it is clear that a directed verdict would not have been proper on this matter. The opinion of the Court of Civil Appeals points out much evidence in support of the jury's verdict. A consideration of the record discloses that the statements by the Court of Civil Appeals are conservative. The testimony of Neyland himself, together with that of the auditor appointed by the court and the bookkeeper

employed by Brown & Root, as pointed out by the opinion of the Court of Civil Appeals, abundantly raised the issues of fact submitted by the court to the jury, unless it be the rule, as contended by Neyland, that, although Brown & Root paid the costs of labor and material which went into these jobs, they were not entitled to credit therefor if they were unable to produce at the trial invoices or statements bearing Neyland's o.k. That theory must be rejected. The rights of the parties should not be held to rest upon the misfortunes of a fire. If Neyland put the costs of these items into the jobs, he should not be permitted to recover one-half thereof as profits.

■ In support of the trial court's action in granting this motion non obstante veredicto it is argued in behalf of Neyland that the burden of proof was on Brown & Root to establish that these several items making up the aggregate under review were for labor, material or other expense actually used in such jobs as were approved by him and having failed to request the submission of any issue as to whether or not the several charges were for items so used or approved they waived such issues and it should be presumed that the trial court found the same against them. We are not in accord with this argument. If the burden was upon Brown & Root to have these issues submitted, a question which we need not decide, it does not follow that they waived any right in respect thereto. The special issues submitted by the court substantially embodied the essential facts from their theory of the case and therefore no element of waiver appears. With respect to the contention that it should be presumed that the trial court found these issues in favor of Neyland, no such presumption can be indulged when judgment is rendered non obstante veredicto. When facts are disputed the presumption will be indulged in a proper case that the trial court determined unsubmitted issues of fact in such manner as to support its judgment, but there is no basis whatever for such presumption when a judgment is rendered non obstante veredicto. This, for the reason that such judgment must be based upon a finding of no evidence. Rodriguez v. Higgingbotham-Bailey-Logan Co., 138 Texas 476, 160 S. W. (2d) 234.

The Court of Civil Appeals correctly rendered judgment on the jury's verdict in favor of Brown & Root on this phase of the case.

### OVERHEAD EXPENSE

■ Brown & Root sought to charge $39,422.01 of their general overhead expenses against the jobs in which Neyland was

interested, it being their theory that such expenses, along with the outside expenses, should be deducted from the contract prices of the various jobs in order to determine the profits realized therefrom. They pleaded that it was agreed between them and Neyland that such expenses should be deductd from the income for the purpose of ascertaining the profits to be divided between the parties. The percentage of the income received which they claimed represented overhead expenses was alleged to be twelve per cent. Alternatively they pleaded that, should it be found that the portion of their overhead expenses which they had charged was not a proper part thereof to be charged to the jobs in which Neyland was interested, they were nevertheless entitled to charge a proper part of said overhead expenses and prayed that said proper charge be determined. Various issues touching upon the matter of overhead expenses were submitted to the jury. With reference to the claim that the parties contracted to deduct overhead expenses from income in determining the profits it is thought that the following fact findings are applicable: (a) It was agreed between Neyland and Brown & Root at Edinburg in April, 1929, that no item of cost should be charged against the Kerr County road construction contract except those items of costs represented by statements and invoices bearing o.k. of Neyland, and except those items of costs represented by premiums paid on performance bonds and workmen's compensation insurance. (b) Under the Edinburg agreement Brown & Root did not have the right to purchase materials and equipment and incur expenses in connection with the jobs in which Neyland was interested and charge same to the cost of such jobs without first procuring Neyland's o.k., except expenses for performance bonds, workmen's compensation insurance and rental of the Wilder rock crusher. (c) At the time of the making of the Edinburg agreement Neyland knew that Brown & Root had expenses which were necessary and properly incurred in the conduct of their business as construction contractors which could not reasonably be charged as a direct cost of the performance of any particular contract performed by them. (d) When the Edinburg contract was made Herman Brown, acting for Brown & Root, understood and intended that a reasonable percentage of Brown & Root's overhead expenses should be charged as cost of performance in ascertaining the profits, if any. (e) But Neyland did not so understand or intend. (f) It was not agreed between the parties at Edinburg that all of the cost and expenses of obtaining and performing the contract for the construction of the Kerr County highway should be deducted from

the revenue from said contract in ascertaining the profits, if any. (g) In submitting bids for the contracts in which Neyland was interested Brown & Root, as a part of their bids, included a percentage of 10.85 per cent. of their said bids to be applied to their overhead expenses.

In view of these several findings by the jury the Court of Civil Appeals held that Brown & Root were not entitled to deduct 10.85 per cent. of the cost of said jobs as overhead expenses. That holding is, to our minds, clearly right. This is true for the reason that the findings do not support the claim of Brown & Root that the parties contracted that such overhead should be deducted.

However, the Court of Civil Appeals was of. the opinion that since the minds of Neyland and Herman Brown did not meet on this question reasonable charges for overhead should be allowed, and remanded the cause for a determination of the question of what items of the claimed overhead expenses were reasonable. In that ruling we think the court fell into error. A consideration of the items of overhead charges claimed by Brown & Root to be proper deductions, in the light of the testimony, makes it uncertain as to whether any of them or any particular portion of any of them were incurred because of the performance of the particular contract in which Neyland was interested. The burden was upon Brown & Root to make proof of the particular items sought to be charged, since the matter was not covered by contract and the information was wholly within their possession. Evidence was offered thereon and the following special issue submitted to the jury, answered as indicated:

"Special Issue No. 42:

"Stated in percentage figures, what percentage, if any, of Brown & Root's overhead expenses for the year 1931, do you find from a preponderance of the evidence to be a reasonable part, if any, of said overhead expenses for said year 1931 to be charged to the cost of performing the contracts upon which Plaintiff worked, which contracts were completed during the year 1931, if you find that any of them were so completed?

"Answer by stating the percentage figures, if any.

"Answer: None."

A like issue was submitted with respect to the year 1930 and a like answer returned. The Court of Civil Appeals gave

no controlling effect to these jury findings, but regarded them as being not fact findings at all but findings of law beyond the jury's province. We do not so regard these findings. Clearly, the special issues were submitted by the court in an effort to submit the question of the reasonableness of the particular overhead charges which Brown & Root sought to have deducted as construction costs. The jury having found that no part of them was reasonable, and no objection having been urged to the form of the issues, we think the trial court correctly disallowed all claimed overhead charges. The part of the judgment of the Court of Civil Appeals relating to this item will be reversed and that of the trial court affirmed.

ITEMS AGGREGATING $5,000 CLAIMED BY NEYLAND AS EXPENSES

In the trial court Neyland recovered judgment for $5,000.00 against Brown & Root on account of alleged expenses incurred by him for the benefit of Brown & Root in connection with other jobs than those in which he, Neyland, was interested. This recovery was disallowed by the Court of Civil Appeals, its holding with reference thereto being that the pleading of this ground of recovery was subject to the special exception directed thereto, and that the evidence was too indefinite to justify the fact finding of the jury. The pleading was as follows:

"Plaintiff further alleges that during the years 1929, 1930 and 1931, at the request of and for the benefit of the Defendant, Brown & Root, Inc., he expended numerous sums incurred as expenses incident to and necessary in obtaining information and making estimates to enable said Defendant to secure the award of contracts for construction jobs and contracts upon which they desired to submit competitive bids, which sums so expended, Plaintiff is entitled to recover from said Defendant, Brown & Root, Inc. The specific amounts and dates of such expenditures Plaintiff is unable to state, but alleges upon information and belief that the aggregate of such sums for which he is entitled to credit upon an accounting and settlement is to-wit: $5,000.00; that the facts relative to these expenditures are. or should appear in the books, cancelled vouchers and memoranda, all of which are in the possession of said Defendant and which such books, cancelled vouchers and other evidence of such expenditures by this Plaintiff, Plaintiff now calls upon the Defendants to produce at the trial hereof, otherwise, Plaintiff will resort to secondary evidence for the proof thereof."

■ The ground of exception of this pleading was that same was so vague and indefinite that it neither informed appellants

of the proof which might be offered thereunder nor did it suffice as a pleading to authorize any proof. The opinion of the Court of Civil Appeals disposing of this question will be adopted as our opinion. It is as follows:

"It clearly appears that in addition to the services of Neyland, under the Edinburg agreement, he did, at Brown & Root's request, investigate, make estimates, report upon and appear before the Highway Commission in connection with other road construction projects during the period alleged. Apparently this was done in contemplation that if Brown & Root were the successful bidder and secure such contracts, he would continue to supervise their performance under the original agreement. Such services of Neyland, in connection with other prospective jobs, did not come within the terms of the Edinburg agreement. There was nothing in his pleading to put appellants upon notice as to where, when, and in connection with what jobs such expenses were incurred, what items were claimed nor the amount of such items. It affirmatively appears that during the period involved numerous contracts were let by the State on many of which Brown & Root were bidders. Neyland's testimony as to items going to make up the $5,000 claimed was as about as indefinite as his pleadings; and the aggregate stated by him was purely an estimate. He testified that he kept written memoranda made at the time of most of such items but that he had lost same and could not produce them at the trial. Since Brown & Root undertook to keep books on such items, it was their duty to segregate from the jobs in which Neyland was interested with them, expenses incurred on other prospective contracts. In a suit by him to recover such items we think it was incumbent upon Neyland to appraise them by pleadings sufficiently specific to give them reasonably definite information as to the basis of his claims, and to enable them to ascertain from their books, or from other sources, the character and amount of such claimed expenditures. There was no definite proof on the trial as to specific items claimed by Neyland, nor the amount thereof; and the round sum of $5,000 found by the jury was manifestly but an approximation based upon Neyland's general estimate that he had so expended that amount. Since some of these expenditures were made by him, according to his own testimony, from his own personal funds, and some from moneys furnished him by Brown & Root, and were not connected with the jobs in which he was interested, it was not enough for him to say to Brown & Root that I claim to have expended for your benefit and at your request, over a period of more than two years, an aggregate sum of $5,000;

and unless you can prove the contrary, I am entitled to a judgment so declaring. Under his own testimony we think it is clear that he could have alleged much more specifically when and where the claimed expenditures were made; and that he has not brought himself within the rule excusing him from doing so. See Schneider v. Ferguson, 77 Texas 572, 14 S. W. 154; Negociacion, etc. v. Love, Tex. Civ. App., 220 S. W. 224; 33 Tex. Jur., Sec. 40, p. 457."

The Court of Civil Appeals correctly reversed and remanded this part of the case.

### ASPHALTIC TOPPING OF KERR COUNTY ROAD.

There was a sharp issue of fact as to whether the topping work on the Kerr County highway should be included in the work to be performed by Neyland under the terms of the Edinburg agreement. Neyland testified that the topping job was unconditionally included in the agreement. Issues with reference thereto were submitted to the jury. In answer to one issue the jury found that such topping work was included in the work to be performed by Neyland under the terms of the Edinburg agreement. In answer to another issue the jury found that Neyland superintended and managed the laying of the topping on that job. However, in answer to other issues the jury found: (a) That the Edinburg agreement that Neyland should participate in the profits, if any, from the topping job was conditioned upon his "screening all of the stone which was to be used in said topping out of the stone crushed for the base of said road as such stone was run from the crusher"; and (b) that Neyland did not screen from the stone crushed for the base all of the stone necessary for the topping of said road. Notwithstanding these findings, which clearly preclude the right of Neyland to recover upon this item, the trial court rendered judgment in his favor thereon for $5,000.00. The Court of Civil Appeals reversed that part of the judgment and rendered judgment on the verdict that plaintiff take nothing on that account. No necessity is perceived for discussing this question at length. The effect of the findings by the jury is that the right of Neyland to recover any profits for topping this highway rested upon a condition which the jury found was not fulfilled by him. From this it follows that he was entitled to recover nothing for the topping job. The Court of Civil Appeals' judgment that Neyland take nothing on this claimed ground of recovery will accordingly be affirmed.

## $12,837.36 DEDUCTION BY HIGHWAY DEPARTMENT.

■ In the settlement between Brown & Root and the State of Texas on the first road construction contract there was deducted by the State Highway Department from the estimates of Brown & Root $12,837.36, which amount the State refused to pay. Neyland was very insistent that the deduction was unauthorized and undertook to press a claim therefor. Although Brown & Root turned the claim over to Neyland for collection, Brown later requested Neyland to discontinue his efforts to collect same. Neyland testified, in effect, that at the time Brown instructed him to discontinue his efforts to collect the claim, he demanded that he be credited with one-half of the amount thereof, to which Herman Brown, acting for Brown & Root, replied: "Well, if that is what it had to be, that would be the way it would have to be." In answer to a special issue the jury found that Brown & Root agreed to credit Neyland with one-half of this item. In its original opinion the Court of Civil Appeals reversed the case generally, which included, of course, this item. On rehearing the court affirmed the trial court's judgment awarding Neyland a recovery upon this item. We have concluded that the court did not err in this ruling. If, as found by the jury, the minds of the parties met, no reason is perceived why a binding contract did not result.

■ Only an implied agreement was pleaded, but no objection was made to the form of the issue submitted, which called for a determination by the jury of whether the parties agreed. We agree with the following language taken from the opinion of the Court of Civil Appeals:

"* * * While confusion has resulted from failure to distinguish between contracts 'implied in law' and contracts 'implied in fact,' it now seems clear that the only distinction between express contracts and contracts implied in fact is in the character of proof required to show how mutual assent is manifested. The determining factor therefore is, whether such agreement is made, not how it is arrived at. Miller v. Miller, Tex. Civ. App., 292 S. W. 917, writ ref.; 12 Am. Jur., sec. 4, p. 498; 17 C. J. S., Contracts, sec. 4, p. 317. In the absence of any objection to the issue as submitted, or of any request for definition or explanation of the term "agreed" in the light of the evidence; we have concluded, upon reconsideration thereof, that under the issue as submitted the jury could find, from the language and conduct of the parties, that such agreement was made."

Viewed from any angle the contract was an advantageous one to Neyland. The chances for collecting this item were remote. In order to establish the claim it would have been required that legislative consent to institute suit be given, and that the suit be successfully prosecuted, notwithstanding the fact that the State Highway engineer, whose duty it was to pass upon claims, rejected this one. Even if a judgment had been obtained and had become final an appropriation would have been required to pay same. All of this, of course, would have involved much expense and delay. However, it cannot be said, as a matter of law, that the contract was wholly lacking in consideration and no principle of law with which we are familiar condemns it.

We also agree with the holding of the Court of Civil Appeals on the question of limitation as applied to this item, and no reason is perceived for discussing the same further.

All assignments of error brought to this Court have been considered and all but one overruled. The assignment by Neyland directed to the question of deducting overhead expenses has been sustained. The result is that that part of the judgment of the Court of Civil Appeals which reverses the trial court's judgment rejecting the claims of Brown & Root for overhead expenses is reversed and the trial court's judgment in that respect is affirmed. In all other respects the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court, March 17, 1943.

Rehearing overruled April 28, 1943.

### ON SECOND REHEARING.

Our original opinion discloses that, with reference to "Items aggregating $34,175.37 not bearing the o.k. of Neyland," the jury made findings in favor of Brown & Root, but the trial court rendered judgment against them non obstante veredicto. The Court of Civil Appeals reversed the trial court's judgment on this phase of the case and rendered judgment on the jury's verdict and we affirmed that portion of its judgment. In his second motion for rehearing Neyland invokes the rule which had become well established in this court prior to the effective date of the Texas Rules of Civil Procedure that, when an appellate court determines that the trial court erroneously entered judgment non obstante veredicto such court should not

render judgment on the verdict, but should remand the case to the trial court with instructions to enter judgment on the verdict and then afford the appellee an opportunity to present a motion for a new trial, and, if overruled, to appeal on the record made at the trial. McAfee v. Travis Gas Corporation, 137 Texas 314, 153 S. W. (2d) 442; Chalmers v. Gumm, 137 Texas 467, 154 S. W. (2d) 640; Johnson. v. Wood, 138 Texas 106, 157 S. W. (2d) 146; Le Master v. Fort Worth Transit Co., 138 Texas 512, 160 S. W. (2d) 224; Rodriquez v. Higginbotham-Bailey-Logan Co., 138 Texas 476, 160 S. W. (2d) 234.

As pointed out in Le Master v. Fort Worth Transit Co., supra, that rule was modified by Rule 324, Texas Rules of Civil Procedure, but this case was tried prior to the effective date of said rules and is therefore to be disposed of in accordance with the rule announced in the above cases. Neyland invokes that rule in his behalf, claiming here that, even if the trial court was in error in rendering judgment in his favor non obstante veredicto on those items, judgment should not have been rendered in the Court of Civil Appeals upon the verdict. He claims that, under the evidence, the award on those items was, at all events, excessive, and that he is entitled to be heard in the trial court with reference thereto. The unusual situation presented lies in the fact that we have ordered that much of the case be retried, and to follow literally the rule announced in the cases above cited and remand this particular phase of the case for further proceedings on the record heretofore made, while at the same time remanding other portions for a new trial, would create an impossible situation. An appeal after the next trial, if same should be prosecuted, would be upon two records, the one now before the court and the one to be made upon another trial. Such procedure would be entirely too cumbersome and would be wholly impractical. The only feasible way to protect the right of Neyland to complain of the jury findings with reference to these items is to remand this phase of the case for a new trial along with the other phases remanded in our original opinion.

■ Having determined that it is necessary to try again the issue with reference to these items, we are compelled to make another change in our judgment heretofore entered herein. The issue with reference to the amount of these deductions do not constitute a separate ground of recovery, but are only elements of a broader ground, namely, what deductions for expenses should be made from the contract prices of the several jobs in order to determine the amount of profits realized

from said jobs? Brown & Root sought to have certain overhead expenses deducted, as well as items not bearing Neyland's o.k. We ruled against their right to do so in the former opinion. To remand for a new trial the question of claimed items of expense not bearing the o.k. of Neyland without at the same time remanding the whole phase of the case having reference to legitimate deductions by Brown & Root would be manifestly to sanction a trial by piecemeal. Such trials are not contemplated by the new rules, nor were they by the rules established prior to their adoption. Texas Employer's Insurance Ass'n. v. Lightfoot, 139 Texas 304, 162 S. W. (2d) 929; Phoenix Assurance Co. v. Stobaugh, 127 Texas 308, 94 S. W. (2d) 428.

The second motion for rehearing will be granted to this extent: That portion of our former judgment affirming the judgment of the Court of Civil Appeals in so far as it rendered judgment on the jury's verdict in favor of Brown & Root on the phase of the case involving "Items aggregating $34,175.37 not bearing the o.k. of Neyland" will be set aside; the judgments of both lower courts with respect to this phase of the case will be reversed and the same will be remanded for a new trial. It is further ordered that that portion of our judgment heretofore rendered, in which the judgment of the Court of Civil Appeals relating to the items of "Overhead expense" was reversed and that of the trial court affirmed, will be set aside and in lieu thereof it is ordered that, with respect thereto, the judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding that phase of the case thereto, will be affirmed.

This whole matter is so complicated and involved that we deem it proper to summarize the status of the case at this time. The case is remanded to the trial court for a new trial upon the following phases: 1. "Saxet Company stock transaction"; 2. "Items aggregating $34,175.37 not bearing the o.k. of Neyland"; 3. "Overhead expense," and 4, "Items aggregating $5,000 claimed by Neyland as expenses." The other phases of the case will not be retried, but will remain finally disposed of in accordance with our judgment on original rehearing and the judgment of the Court of Civil Appeals not disturbed by us. Judgment will be rendered against the sureties on the supersedeas bond for the amount of the trial court's judgment against Brown & Root which has been affirmed.

Opinion adopted by the Supreme Court June 9, 1943.