COLONIAL SAVINGS ASSOCIATION,
Petitioner,

v.

Waymon Joel TAYLOR, Respondent.

No. B–5883.

Supreme Court of Texas.

Nov. 24, 1976.

Rehearing Denied Dec. 22, 1976.

Vinson, Elkins, Searls, Connally & Smith, Frank C. Gibbs, III, Houston, for petitioner.

Hicks, Hirsch, Golver & Cochran, Iris Hefter Robinson, Houston, for respondent.

DOUGHTY, Justice.

This controversy arose because a house owned by respondent, Mr. Taylor, which was destroyed by fire, was not insured. Mr. Taylor sued petitioner, Colonial Savings Association, contending that Colonial had gratuitously assumed responsibility for insuring the house and had negligently failed to do so. Trial was to a jury, which returned a verdict with answers favorable to Mr. Taylor, but the trial court entered judgment *non obstante veredicto* for Colonial. The court of civil appeals reversed the judgment of the trial court and entered judgment for Taylor for $4,300.00. Tex.Civ. App., 533 S.W.2d 61. We reverse the judgment of the court of civil appeals and remand the cause to the trial court with instructions.

The property involved is located at 846 East 26th Street in Houston. There are two houses at this address, an older house near the street and a newer house behind it. Taylor purchased the property in 1967 from Mr. and Mrs. James E. Reynolds, taking title subject to a prior outstanding lien held by Colonial. In consideration for the conveyance Taylor made four over-due payments to Colonial on the Reynolds note which the property secured. Pursuant to the conveyance, Colonial transferred the mortgage loan to Taylor's name, and he has made all subsequent payments thereon.

Under the deed of trust held by Colonial, Mr. and Mrs. Reynolds, as grantors, agreed to keep the property insured against fire in an amount sufficient to protect Colonial's security interest, and that, if grantors failed to obtain such insurance, Colonial could purchase insurance and add its cost to the monthly mortgage payments.

Taylor testified that, when he purchased the property, Mr. Reynolds told him that Colonial had purchased fire insurance and was charging for the premiums along with the mortgage payments. On July 23, 1968, Taylor received the following letter from Colonial:

Mr. Waymon Joel Taylor, Sr.
1232 Richelieu Street
Houston, Texas
Re: Loan 800–0068
Property 846 E. 26th St.
Sunset Heights
Dear Mr. Taylor:
The insurance coverage on the above captioned expired today and we have bound $8,700.00 coverage with our agent on this property.
Please let us know if you now live on this property. If you do reside at this address you may wish to have this coverage written as a home owners instead of a straight fire policy.
Let us know in order that we may have the agent write this coverage.
Yours truly,
/s/ E Priester
Esse Priester

Taylor further testified that after receiving this letter, he informed a representative of Colonial by telephone that he did not reside on the property; he asked the representative about liability coverage for the

property, and was referred to the agent who had obtained the fire insurance for Colonial, Mr. C. M. Burton. Taylor talked to Burton about liability insurance but did not purchase any. A few days later Taylor received by mail a memorandum of the fire insurance policy, issued by United States Fidelity and Guaranty Company through its agent Mr. Burton. The policy was effective from July 23, 1968, to July 23, 1971. It provided $8,700.00 in coverage (the amount outstanding on the Reynolds note) and described the property insured as a one-story composition asbestos siding building at 846 East 26th Street in Houston. It is undisputed that this policy covered only the older, larger house on the property, and not the smaller house on the back of the lot. Taylor testified that when he received this policy he only glanced at it to see that it referred to the 26th Street property, and filed it away without examining it further. There was no further correspondence on the subject of insurance until January 7, 1971, when the smaller, uninsured house was substantially damaged by fire. Only after the fire, according to his testimony, did Taylor learn that the house was not covered by the insurance policy which Colonial had obtained.

Taylor sued Colonial, alleging that it was negligent through its agents in failing to purchase a policy of insurance covering the damaged property, and that Colonial's negligence was a proximate cause of his loss. Colonial contended that it had no duty to provide insurance coverage for Taylor, and that Taylor did not reasonably rely on their letter of July 23, 1968, in failing to obtain his own insurance coverage. Trial was to a jury, which found in answer to special issues that:

(1) Colonial "undertook to provide fire insurance coverage on Mr. Taylor's premises";

(2) Colonial or its representatives "were aware that there were two structures on the premises";

(3) Colonial or its representatives "failed to relay this information to the C. M. Burton Insurance Agency";

(4) "The failure to relay this information to the C. M. Burton Insurance Agency was negligence"; and

(5) This "negligence was a proximate cause of Mr. Taylor not being able to recover for the fire loss to his property."

The jury failed to find that Taylor "failed to make that examination of his policy of insurance as would have been made by a person of ordinary prudence in the exercise of ordinary care would have made under the same or similar circumstances."

The jury also failed to find that Taylor was negligent in failing to obtain insurance on the damaged house. The jury found that the reasonable cost of repairs to the house was $5,594.20.

The trial court, in response to Colonial's motion for judgment *non obstante veredicto,* entered judgment that Taylor take nothing. The court of civil appeals reversed, holding that Colonial, having undertaken by its letter to Taylor to provide insurance for "this property," had a duty to Taylor "to act in a non-negligent manner," and that the evidence was sufficient to support the jury's findings that Colonial was negligent in failing to provide complete insurance coverage and that such negligence was a proximate cause of Taylor's loss. The court also held that Taylor's possession of the policy memorandum did not prevent him from recovering for Colonial's negligence, because there was evidence that he did not know of the contents of the memorandum and that he had relied on Colonial's statement that the policy covered "this property." The court entered judgment for Taylor for $4,350.00, reasoning that, had Colonial provided coverage for the damaged house, recovery would have been limited under the terms of the policy to half the amount of coverage of $8,700.00.

Colonial first contends that Taylor's claim is "barred by his ratification of the contents of his insurance policy, through inaction, while having the policy in his possession for approximately two and a half years." Colonial cites *National Life Underwriters v.*

*Miller,* 274 S.W.2d 169 (Tex.Civ.App.—Fort Worth 1954, no writ), and *Sublett v. World Insurance Co.,* 224 S.W.2d 288 (Tex.Civ.App. —Dallas 1949, no writ), both of which were suits against insurers arising from misrepresentations of insurance agents regarding policy terms and coverage. Recovery was denied in both instances, in part at least on the ground that insureds, having accepted the policies as written, could not later deny knowledge of their contents. The court in *Sublett* stated, at 224 S.W.2d 289:

> One who holds a policy of insurance for several years, or even months, without ascertaining that it was not the policy he ordered, must be deemed to have accepted it in the form in which it was actually issued.

■■■ It has been held by some courts that an insured has a legal duty to read his insurance policy, and that if he accepts the policy without objection, he cannot later seek its reformation on the ground that the prior agreement of the parties provided for a different coverage. See Annot., 81 A.L. R.2d 7, 85 (1962), and cases there cited. The prevailing view, however, was stated by this court in *Fireman's Fund Indemnity Co. v. Boyle General Tire Co.,* 392 S.W.2d 352, 355 (Tex.1965), as follows:

> [A]n insured who accepts a policy without dissent, is presumed to know its contents, but the presumption may be overcome by proof that "he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed he had correctly drawn it." *Delaware Ins. Co. v. Hill,* 127 S.W. 283, 286–287 (Tex.Civ.App.1910, writ ref.); . . . .

We believe that the rule stated in *Boyle* is applicable here.[1] Although Colonial was not an insurance agent or insurer issuing a policy to Taylor for consideration, Colonial did voluntarily undertake to provide insurance coverage for Taylor's property (as found by the jury), and in this undertaking

Colonial's duty was similar to that of an insurance agent. Taylor's testimony that he put the policy memorandum away without reading it destroyed the presumption that he was aware of its provisions, and because he did not read the policy he could not "ratify" its contents. It thus became Colonial's burden to prove that Taylor was negligent in failing to read the policy. See *Schustrin v. Globe Indemnity Co.,* 44 N.J. Super. 462, 130 A.2d 897 (1957). Because the jury found that Taylor was not negligent—a finding for which there is support in the evidence—his failure to read the policy does not bar his recovery.

■■■ Colonial next contends that the court of civil appeals erred in holding that it had a legal duty to insure all improvements on Taylor's property, and in holding that the deed of trust between it and Reynolds established any duty owed by it to Taylor. We agree that any duty owed by Colonial to Taylor cannot rest upon the terms of the deed of trust, because Taylor did not assume the indebtedness when he purchased the property, and thus was not a party to the deed of trust. However, Taylor's theory of recovery is based, not upon the deed of trust, but upon Colonial's letter of July 23 in which it stated that "we have bound $8,700.00 coverage with our agent on this property." Taylor contends that Colonial gratuitously undertook a duty, as shown by this letter, to provide coverage for all of his property at 846 East 26th Street, including the house which was damaged by fire. Taylor's theory of recovery, as revealed by the issues submitted to the jury, was based on the rule that one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby. This proposition has long been recognized by the courts of this State. See *Fox v. Dallas Hotel Co.,* 111 Tex. 461, 240 S.W. 517 (1922). The rule is stated in the Restatement (Second) of Torts § 323 (1965) as follows:

---

1. To the extent that *Miller* and *Sublett* are inconsistent with the rule stated in *Boyle,* they are hereby disapproved.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

The jury found that Colonial *had* undertaken to provide fire insurance coverage for both houses, and the letter of July 23 is support for that finding. It necessarily follows that Colonial, having undertaken to obtain coverage, had a duty to exercise reasonable care to perform this undertaking.[2]

■ Colonial contends that Taylor had the burden of showing not only the existence of a duty and negligence in its performance, but also that Taylor *relied* on Colonial's undertaking to provide insurance, in order to establish Colonial's liability. The rule as stated in Section 323 of the Restatement, quoted above, imposes liability for injuries caused by the negligent performance of a gratuitous undertaking, *if* (a) the actor's negligence *has increased the risk of physical harm, or* (b) the injured party has *relied upon* the undertaking. Taylor argues that reliance was not a necessary element of his cause of action because Colonial's negligence increased the risk of harm. We disagree. Colonial's failure to obtain insurance on the house did not increase the risk of fire to the house. If Taylor did not intend to insure the house against loss by fire in any case, then Colonial's failure to provide insurance would have left Taylor in no worse condition than if Colonial had never undertaken to provide insurance in the first place. Had Taylor never learned of Colonial's undertaking to provide insur-

ance, he certainly could not be heard to say that Colonial should be liable for failing to do so, because the loss would be as much a result of his own failure to obtain insurance as of Colonial's. We hold, therefore, that Colonial cannot be liable for Taylor's loss unless Taylor forbore from obtaining his own insurance in reliance upon Colonial's undertaking to obtain it for him.

No issue was requested or submitted to the jury inquiring whether Taylor relied on Colonial's undertaking to obtain insurance for him, nor did Colonial object to the failure to submit such an issue. There is evidence in the record which created an issue of fact as to whether Taylor relied on Colonial's undertaking to provide insurance. This court has previously faced a similar situation. *Rodriguez v. Higginbotham-Bailey-Logan Co.,* 138 Tex. 476, 160 S.W.2d 234 (1942), was a suit to recover on a contract made by the defendant's alleged agent. The court stated that two essential elements were necessary to sustain plaintiff's alleged ground of recovery; first, that the contract was entered into by the alleged agent, and secondly, that the alleged agent had authority to bind his principal. The first issue was submitted to the jury which found that the contract had been made. No issue was submitted, and none requested, as to whether the alleged agent had the authority to make the contract. Judgment was entered for defendant upon its motion *non obstante veredicto*. Chief Justice Alexander, writing for the court, said:

\* \* \* The authority for a trial court to render judgment non obstante veredicto is found in the second part of Article 2211, Vernon's Annotated Civil Statutes, which provides: " \* \* \* upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, \* \* \* ."

*Maddock v. Riggs,* 106 Kan. 808, 190 P. 12 (1920); *Siegel v. Speal & Co.,* 195 App.Div. 845, 187 N.Y.S. 284 (1921), affirmed 234 N.Y. 479, 138 N.E. 414 (1923); *Valdez v. Taylor Automobile Co.,* 129 Cal.App.2d 810, 278 P.2d 91 (1955).

---

**2.** The principle enunciated in Section 323 of the Restatement has been applied in several cases where a party has gratuitously undertaken to provide insurance for another and negligently failed to do so. See *Criswell v. Riley,* 5 Ind. App. 496, 30 N.E. 1101, 32 N.E. 814 (1892);

Under the above statute, judgment non obstante veredicto can be rendered only when the facts are such that an instructed verdict would have been proper. If the evidence had been undisputed that the alleged agent did not make the agreement, or that he did not have authority to make it, the court could have rendered judgment for the defendant non obstante veredicto. But the Court of Civil Appeals concluded that the evidence on both of these issues was in dispute, and we are in accord with this view. Therefore, the court had no authority to render judgment non obstante veredicto. When the court renders judgment non obstante veredicto it is equivalent to a finding that there was no evidence to raise an issue for the jury, and consequently there is no presumption of a finding by the court on disputed issues of fact. . . . Since there was a dispute in the evidence, the trial court erred in rendering judgment non obstante veredicto.

Rule 301, Texas Rules of Civil Procedure, is identical to Article 2211, referred to by Chief Justice Alexander. Since there was evidence to support the disregarded findings of the jury in answer to special issues 3, 4 and 5, and there was a disputed fact issue on Taylor's reliance on Colonial to obtain insurance on the two structures, it was error for the trial court to grant Colonial's motion for judgment *non obstante veredicto,* and there can be no presumption of a finding by the court on the disputed reliance issue. *Hall v. Hard,* 160 Tex. 565, 335 S.W.2d 584 (1960); *Neyland v. Brown,* 141 Tex. 253, 170 S.W.2d 207 (1943).

There being no request for a jury issue on the question of Taylor's reliance, and no objection to the failure to submit the issue, it was for the trial court to make a finding on the disputed evidence. Rule 279, Texas Rules of Civil Procedure. We therefore remand the cause to the trial court with instructions to proceed as though *no* judgment *non obstante veredicto* had been entered.

The judgments of the trial court and the court of civil appeals are reversed, and the cause remanded to the trial court with instructions to proceed as though judgment *non obstante veredicto* had not been rendered.