Pete O. ZAMORA, d/b/a Pete O. Zamora Insurance Agency, Appellant,

v.

Woodie KITCHING and Sandra Kitching, Appellees.

No. 01–84–00348–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1984.

Rehearing Denied Jan. 24, 1985.

Charles A. Daughtry, Richard B. Dreyfus, Dibrell & Greer, Galveston, for appellant.

Douglas H. Chilton, Mabry, Herbeck & Chilton, Texas City, for appellees.

Before BASS, DUGGAN and BULLOCK, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a judgment entered on a verdict in favor of homeowners in their suit against their insurance agent for damages occasioned by the agent's alleged negligent failure to inform them that their flood insurance had lapsed.

In answers to special issues, the jury found that the defendant/appellant, Pete O. Zamora, was 75% negligent (a) in failing to notify plaintiffs/appellees, Woodie and Sandra Kitching, that he had received their copy of the National Flood Insurance Renewal Form; (b) in disregarding a "Speed Letter" from the Kitchings' mortgage company inquiring as to the non-renewal of their flood insurance policy; and, (c) in failing to notify the Kitchings that he had received their "Payor Copy" of the National Flood Insurance Premium Notice. The jury likewise found that the Kitchings were 25% negligent in failing to pay their flood insurance premium before the expiration date, and that the cost of repairs reasonably necessary to restore the appellees' residence to its former condition was $20,-704.75. The court's judgment awarded the plaintiffs 75% of that amount, or $15,-528.56.

The appellant raises eight points of error on appeal.

When the Kitchings purchased their home in Dickinson in March of 1974, Zamora's real estate agency handled the transaction. Additionally, through his insurance agency, Zamora helped the Kitchings procure a policy of home owner's insurance and a one-year flood insurance policy with the National Flood Insurance Program. This flood insurance policy was renewed annually in 1975, 1976, 1977 and 1978 after the Kitchings received renewal notices directly from the National Flood Program.

The flood policy lapsed on June 16, 1979, for nonpayment of premium, and on July 26, 1979, the appellees' home was damaged by extensive flooding in the Dickinson area.

Sandra Kitching testified that the payor's endorsement of the original flood insurance policy called for the Kitchings' mortgage company to pay the yearly premium due. Yearly policy renewal notices were mailed to the Kitchings as insureds, to the mortgage company as payor, and to Zamora as agent. In 1975, 1976, 1977, and 1978, duplicate premium payments were made when Mrs. Kitching received the insured's copy of the renewal notice and paid the "bill," and the mortgage company, as payor, also made payments.

Mrs. Kitching testified that she "usually" paid the renewal premiums through Zamora's office by making out checks to P.O.Z. Realty or to the National Flood Insurance Program, and that she either personally delivered the checks or mailed them to Zamora's office. The evidence of this method of payment consisted of copies of two checks found in Zamora's file: (1) the Kitchings' check dated June 11, 1975, payable to "P.O.Z. Realty;" and, (2) the Kitchings' check dated May 16, 1978, payable to "National Flood Insurance." All of the Kitchings' other cancelled checks and records were lost in the flood. No other checks or records were produced to show how payments were made.

Mrs. Kitching testified that she never relied on Zamora to notify her that the renewal premium was due and that Zamora never called her to make sure that the premiums were paid. She testified that she received a renewal notice from National Flood each year from 1975 through 1978, but denied that she received a renewal notice for 1979. Mr. and Mrs. Kitching both testified that when they went to Zamora's office on July 30, 1979, after the loss, they saw in Zamora's file not only the 1979 renewal notices they should have received but also a policy expiration notice dated as having been mailed from National Flood on July 31, 1979.

Zamora denied that the "payor's" copies of the insurance renewal notices were ever in his file or that he had received them. He testified that if he had received the *payor's* copies of the renewal notices, there would have been some form of transmittal letter or explanation from National Flood, and there was no such letter or explanation in his file. He did testify that he had received the *agent's* copies of the renewal notices dated May 2, 1979 and June 4, 1979, and a "Speed Letter" from the Kitchings' mortgage company dated June 14, 1979. This "Speed Letter" stated:

> The flood policy on the captioned loan will expire on 6/16/79 and our records indicate that Mr. Kitching is to pay the premium, however, we have not receive [sic] evidence of renewal coverage. Please review your records and advise us if this premium has been paid and the coverage extended.

Zamora testified that he received this letter, dated June 14th, only after the June 16th policy expiration date, and that while he made no attempt to contact the Kitchings, he did contact the mortgage company.

Zamora testified that after his receipt of the "Speed Letter" from the mortgage company, he received a draft payable to the Kitchings in care of Pete O. Zamora Insurance Agency, dated June 22, 1979, from National Flood in the amount of $83.00. At the bottom of the draft, which was introduced in evidence by the Kitchings, was the following notation:

> Frequently, both the insured and the mortgagee will pay a renewal notice at the same time, resulting in a double payment. Perhaps this is what happened in your case. *This draft is a refund of a duplicate payment since your policy has already been renewed.* (Emphasis added).

Zamora testified that after he received this draft he assumed that the renewal premium had been paid in duplicate for the Kitchings' 1979 flood policy. He deposited the draft in his agency account, allowed time for it to clear, wrote out a check to the Kitchings for $83.00, and mailed it on July

24, 1979, to the address provided by the Kitchings, 12226 Oak Lane, Dickinson, Texas 77539. The letter was returned to Zamora on or about July 25, 1979, with a notation on the envelope, "Return to Sender, Undeliverable as Addressed, Dickinson, Texas."

The flood which damaged the Kitching's home occurred on July 26, 1979, a Wednesday. On the following Monday, July 30, 1979, Mrs. Kitching came to Zamora's office to turn in a claim for flood damage. Zamora testified that it was then that he noticed he had not received a notice from National Flood that the Kitching's policy had been renewed. Zamora also testified that Mrs. Kitching told him at that time that she had sent in the renewal premium. In Mrs. Kitching's presence, Zamora called the National Flood Program office and was told that the company had no record of having received payment for the renewal premium, that company records showed the renewal notices had been mailed to the insured at 12226 Oak Lane, and that the company had no record of the return of these notices as not received by the insured.

Woodie Kitching testified that prior to his wife's and his visit to Zamora's office on July 30th, both had called Zamora and told him they had sustained flood damage, and Zamora had arranged for a National Flood Program adjuster to come out to their home. The adjuster was prepared to give the Kitchings an initial payment of $10,000 toward their flood loss when she checked with her office and discovered that the flood policy renewal premium had not been paid. Mr. Kitching testified that he told Zamora when he first spoke to him that he paid the premium, had a loss, and wanted to claim this loss.

By his first point of error, Zamora contends that the trial court erred in rendering judgment for the Kitchings because there was no evidence that he had a duty to prevent the expiration of the Kitchings' flood insurance policy.

 The right to recover for injuries resulting from negligence is founded upon the violation of a duty. Where no duty exists, there can be no violation of duty and no negligence. *Trinity Universal Insurance Co. v. Burnette*, 560 S.W.2d 440, 442 (Tex.Civ.App.—Beaumont 1977, no writ). The plaintiff has the burden of proving the existence and the violation of a legal duty. *Taylor v. Colonial Savings Assn.*, 533 S.W.2d 61, 64 (Tex.Civ.App.—Houston [1st Dist.] 1975, *rev'd on other grounds* 544 S.W.2d 116 (1976)).

Appellant's omission to act lay in his failure to notify appellees of his receipt of the payor's copy of the renewal form and renewal notice, as well as the "Speed Letter" from appellees' mortgage company. However, unless some relationship between the parties imposed a duty to act, there was no liability for an omission to act. *Gibson v. R.O. "Bill" Williams Ins. Co.*, 398 S.W.2d 408, 410 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.).

A relationship between appellant and appellees was first established when he aided them in applying for flood insurance when they purchased their home. Appellant was listed as the insurance agent on the yearly renewal notice forms sent to appellees by the National Flood Insurance Program, and received a yearly commission from the National Flood Program after appellees renewed their policy. The evidence is uncontroverted that appellees made at least two premium payments for the flood insurance policy through appellant's office. In 1978, at the request of the Kitchings' mortgage company, Zamora corresponded with National Flood to change the payor endorsement on the policy from the mortgage company to the Kitchings. Mrs. Kitching testified that she spoke only to the mortgage company about this change in endorsement which she requested, and that she "never talked to Mr. Zamora until the day of the flood."

Uncontroverted evidence further shows that from 1974 until 1978 it was the responsibility of the Kitchings' mortgage company to pay the flood policy premiums, and that the Kitchings never relied on Zamora

to notify them that a renewal premium was due.

Zamora's expert witness, an independent insurance agent since 1974, testified that the National Flood Insurance Program differs from other types of insurance coverage in that it does not assume the liability of issuing a renewal notice to the insured; that the renewal notice sent out by the program is merely a courtesy to the insured; and that the person who pays the premium assumes the responsibility to see that the policy is renewed every year. He likewise testified that in his experience with the National Flood Program, he has on occasion received the insured's copy of a renewal notice, but that a form letter has been attached each time explaining why the insured's or payor's copy was being sent to the agent. When asked on cross-examination if it was his duty to forward the insured's copy of a renewal form if the copy was in his file, he answered, "[i]t would be a professional courtesy; it would not be a duty."

Few Texas cases deal with whether an insurance agent has a duty to inform an insured as to an insurance policy renewal date. Zamora relies on the case of *Gibson v. R.O. "Bill" Williams Ins. Co., supra,* to support his contention that he had no duty to notify the Kitchings about the non-renewal of their policy.

In *Gibson,* an insurance agent advised his client by a letter, dated five days after the policy expired, that he would not be able to renew coverage on the client's beach house. This letter was received one day before Hurricane Carla hit and five days after the U.S. Weather Bureau issued its first storm bulletin. The client was unable to secure coverage for his beach house before the storm hit. Prior to this notification of nonrenewal, the insurance agent had carried the insured's automobile insurance for about ten years. At renewal time for the automobile policy, the agent would renew that policy, sometimes with prior client contact and sometimes without. The renewal automobile policy, when sent

to the client, would always have a sticker attached stating that:

> This policy is mailed to you in keeping with our practice of never letting our customers' protection lapse....

Despite the evidence of these stickers, the Beaumont Court held that, under the circumstances presented, the agent did not have a duty to notify the insured that the policy covering the beach house would not be renewed. "There is no doubt that an insurance agent may contract with an insured to maintain certain coverage, and that an action would lie in the event of breach of such contract." *Gibson,* 398 S.W.2d at 410. Because no such agreement existed, however, the court found no duty on the part of the agent to notify his client earlier of the policy's non-renewal.

In arguing that Zamora had a duty to notify them of his receipt of their renewal notices or of the date of renewal of the policy, the Kitchings rely on the 1977 decision in *Trinity Universal Ins. Co. v. Burnette, supra,* also by the Beaumont Court, where the uncontroverted evidence showed that the insurance agent handled a number of policies for the insured and had always renewed the policies or notified the insured when policies were not renewed. *Burnette* held that "[a]lthough there was no statutory or contractual duty impressed upon ... [the agent] to notify its policyholders of non-renewal," the agent was under a duty as the insured's agent "to either renew their policy with Trinity, replace the policy with another company, or notify them of its non-renewal so that they could obtain insurance elsewhere." *Id.* at 443.

The Texas Supreme Court held in *McCall v. Marshall,* 398 S.W.2d 106 (Tex.1965) that no legal duty arises on the part of an insurance agent to extend his customer's insurance protection merely because the agent knows of the need for additional insurance, in the absence of evidence of prior dealings whereby agent has taken care of his customer's needs without consulting him. Conversely, in *Diamond v. Duncan,* 107 Tex. 256, 172 S.W. 1100 (1915), the court held that an insurance

broker who had for years procured insurance for his client and handled renewals and placement, had a duty to obtain substitute coverage when he knew that the insurance company covering his client's property had become insolvent.

An insurer has no duty to notify an insured of the time when a premium falls due unless (1) such notice is required by statute or agreement of the parties; or, (2) the insurer has by custom or course of dealing with a particular insured led him to believe that a notice of premium due will be sent. *Vance on Insurance,* sec. 55 (3rd ed. 1951). Substantial authority from other jurisdictions states that neither the insurer nor its agent has a legal duty to give notice of the expiration of an insured's policy since the insured is charged with the knowledge of the expiration date stated in the policy and the necessity of tendering a premium for renewal. *Citta v. Camden Fire Ins. Ass'n., Inc.,* 152 N.J.Super. 76, 377 A.2d 779, 780 (N.J.Super.1977), citing *Gibson v. R.O. "Bill" Williams Ins. Co., supra; Burns v. Ramsey,* 520 P.2d 137, 138 (Colo.App.1974); *Shepherd v. United States Fidelity & Guaranty Co.,* 504 P.2d 228, 229 (Kan.1972); *Kapahua v. Hawaiian Insurance & Guaranty Co.,* 447 P.2d 669, 671 (Hawaii 1968).

No statute requires an agent to notify an insured that a National Flood Insurance Program renewal premium is due. Appellant's expert witness likewise testified that the National Flood Program does not assume the liability of issuing renewal notices. The appellees' own uncontroverted testimony showed that there was no agreement between the parties by which Zamora was required to notify the appellees as to payment of flood renewal premiums. Additionally, there is no evidence that Zamora, by custom or course of dealing with the Kitchings, led them to believe that he would send out a notice that a renewal premium was due, or see that the renewal premium was paid. The Kitchings both testified that they never relied on Zamora to send a renewal notice or to pay their premiums gratuitously.

The evidence fails to prove that such a definite relationship existed between Zamora and the Kitchings as to impose an affirmative duty on Zamora to act to notify the Kitchings that their insurance had not been renewed. *McCall,* 398 S.W.2d at 109; *Gibson,* 398 S.W.2d at 410. There being no affirmative duty on Zamora to act, there can be no action for negligence for his failure to do so. The trial court erred in rendering judgment for the plaintiffs based on the negligence issues submitted to the jury. Appellant's point of error one is sustained.

Our holding of no duty on the part of the appellant is dispositive of this appeal, and it is therefore unnecessary to consider appellant's seven remaining points of error, all of which are predicated upon the existence of a duty by appellant to notify appellees in connection with policy renewal. The judgment of the trial court is reversed and judgment rendered that the plaintiffs/appellees take nothing.

Reversed and rendered.