ASSOCIATED ARCHITECTS & ENGINEERS, INC., Appellant,

v.

LUBBOCK GLASS & MIRROR CO. and Southwestern Sheet Metal Works, Inc., Appellees.

No. 7743.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 23, 1967.

Rehearing Denied Nov. 30, 1967.

 

Brown, Shuman & Harding, Lubbock, Clifford W. Brown, Lubbock, of counsel, for appellant.

Nelson, McCleskey & Harriger, and Don Graf, Lubbock, Peticolas, Luscombe & Stephens and Mark F. Howell, El Paso, for appellees.

CHAPMAN, Justice.

This is an appeal from a jury verdict for Lubbock Glass & Mirror Company against Southwestern Sheet Metal Works, Inc. and Associated Architects & Engineers, Inc. of Lubbock. Judgment was also entered in favor of Southwestern Sheet Metal Works, Inc., against Associated Architects & Engineers, Inc. of Lubbock for indemnity as to recovery by Lubbock Glass & Mirror Co. and for $906.07 on Southwestern's cross-action against Associated Architects. The parties will be hereinafter referred to as appellant or Associated Architects, Lubbock Glass and Southwestern. Howard Schmidt was named in the petition of Lubbock Glass as a defendant but by stipulation at the beginning of the trial, it was agreed that as general manager his actions as they relate to the case were binding upon Associated Architects.

Lubbock Glass received a purchase order from Southwestern, subcontractor for the construction of a Central Foods Building at Texas Technological College, for six Type "A" Skylights "as per plans and spec." for said building. The purchase price was $1,077.

The plans and specifications referred to were drawn under the supervision of Howard Schmidt for Associated Architects. The particular type skylights were of a diagonal prism type which had the prisms arranged in such manner as to diffuse or deflect the sunlight in the summer time in order to aid in the cooling of the building and to permit the sunlight to come through in the winter time to aid in the heating of the building.

Lubbock Glass in following the plans and specifications drawn by Associated Architects ordered six "C–45–D" Skylights from Products Research Company. They were subsequently delivered to Southwestern for installation. When placed on their respective openings, it was discovered that the north arrow was pointing west instead of north, thus negativing the benefits of the sun the prisms were designed to utilize.

The skylights were not installed at first but just left covering the openings. Subsequently, the skylights were rejected by Associated Architects and the proper model ordered, which was "C–54–D" Skylights. When the construction of the building was completed, Southwestern installed and made secure the first skylights delivered because the correct ones had not arrived and underneath the skylight holes was about $200,000 worth of kitchen, produce, processing and bakery equipment.

■ Associated Architects is before us upon eighteen points of alleged error. Its Points 12, 13, 16 and 17 are neither restated, briefed nor argued. Therefore, we may assume those points were waived. Rule 418, Vernon's Ann.Tex.Rules of Civil Procedure; McClanahan v. Cook, 401 S.W.2d 352 (Tex.Civ.App.-Amarillo, 1966, no writ) and the authorities there cited on the question.

In response to the court's submission the jury found: "(1) the 'C–45–D' Skylights furnished to Southwestern complied with the plans and specifications furnished by appellant for the building; (2) Howard Schmidt was negligent in preparing the plans and specifications and such negligence proximately caused Lubbock Glass to order the skylights; (3) the damages caused to Lubbock Glass were $1,077; (4) the architect rejected the skylights furnished by Lubbock Glass and installed by Southwestern; that such rejection was negligence and a proximate cause of damages to Southwestern in the amount of $906.07, (shown to be the cost of returning from El Paso and installing the proper

skylights after they were delivered); (5) Southwestern installed the first skylights with the north arrow pointing west, but such installation was not negligence."

In its first five points appellant contends there is no evidence to support the jury's findings that the "C–45–D" Skylights complied with the plans and specifications; that appellant was negligent in preparing them and such negligence was a proximate cause of the $1,077 damages to Lubbock Glass; that the action of Southwestern in installing the "C–45–D" Skylights was not negligence. In its Point 15, grouped with its first five points, appellant contends the court erred in overruling appellant's motion for instructed verdict "which reasons are more fully set out in said motion."

In its Points 6 through 11 appellant contends there is factually insufficient evidence to support the jury's answer to Special Issues 1, 2, 3, 8, 9 and 12. By the use of the term "factually insufficient evidence" throughout this opinion, we have reference to the question of the great weight and preponderance of the evidence.

In passing upon the factually insufficient points, our requirements are detailed in the following language found in the Supreme Court of Texas' per curiam opinion in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951) and the many cases following it:

"The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict."

Both Jack Redinger and Charles Shepherd of Lubbock Glass testified in effect that the detailed drawings for the skylights called for "C–45–D" Skylights, which was what Lubbock Glass ordered. Mr. Schmidt himself testified his firm drew the plans for the skylights; he expected all parties to rely on its company's specifications; that Exhibit P–3 indicated a 4′ x 5′ skylight diagonal curb type would bear a code number "C–45–D" and admitted that if he were drawing them over again he would show 5′ x 4′ on the detail instead of 4′ x 5′.

If we understand appellant's contention it is that because the skylights were not oriented in their placement with the north designation facing north, (as testified to by their witnesses and admitted by all concerned), then they did not meet the plans and specifications. Therefore, there is no evidence or the evidence is factually insufficient to support the jury findings.

Such reasoning is not sound. Lubbock Glass had no responsibility as to the installation but only to supply the type materials called for on the plans and specifications, which they did. Secondly, the information for installation is not relevant to the question of the type or size skylight needed. Because the specifications from which the order by Lubbock Glass was placed were improper, it was impossible to orient them to the recommendations of the manufacturer. Appellant cannot rely on the impossibility created by its own improper plans to justify its contention of no evidence or factually insufficient evidence to support the jury findings that the skylights furnished by Lubbock Glass complied with the plans and specifications, that appellant was negligent in the drawing of the plans, and that such negligence was a proximate cause of the damages Lubbock Glass suffered. We feel that so far as Southwestern is concerned appellant likewise cannot rely on no evidence and factually insufficient evidence to relieve itself of the jury finding that it was guilty of negligence in rejection of the very skylights its drawings called for, as found in Special Issue No. 8.

The evidence supporting the jury's finding that the installation of the first set of skylights was not negligence on the part of Southwestern cannot be said to be factually insufficient when we consider the testimony by Mr. Schmidt himself that $200,000 worth of kitchen, produce, processing and bakery equipment was located under the skylights and to have boarded them up would have been gambling on the part of the contractor.

We also hold the jury's answers to Special Issue No. 9 is not factually insufficient. That issue finds the rejection by appellant of the skylights its specifications called for was a proximate cause of Southwestern's damages. Had they not been rejected, it is true they would not have served the purposes intended, but such situation does not militate against the fact that appellant by rejection forced Southwestern to the extra expenses for installation of the correct set, and appellant should have foreseen that improper drawings and rejection of the skylights called for thereby would necessitate the extra trip by Southwestern to remove appellant's mistake and install the proper skylights when they became available.

We have not discussed appellant's Point 15 for the reason that we consider it as entirely too general to raise a proper point. It states the reasons its instructed verdict should have been rendered are fully set out in its motion. When we refer to the transcript we find three motions for instructed verdict, so we are unable to determine which one appellant is making reference to in its point.

Because of the inferences we must honor in sustaining the jury verdict, In re King's Estate, supra, the burden is less onerous on appellant to sustain factually insufficient points than no evidence points. Since we have determined, in considering all the evidence, that the jury's answers to the points discussed are not so against the great weight and preponderance of the evidence as to be manifestly unjust, it naturally follows that there is some pro-

bative evidence to support such issues. Therefore, Points 1 through 5, 15, and 6 through 11 are overruled.

Point 18 urges reversible error in failing to sustain objections to the evidence of damages submitted by Southwestern because they were not a proper measure of damages and Point 14 claims reversible error in submitting Special Issue 10 for the same reason. Special Issue No. 10 is as follows: "From a preponderance of the evidence, what amount of damages, if any, was suffered by Southwestern Sheet Metal Works, Inc. as a result of the negligence, if any, of Howard Schmidt?"

■ Reference to the transcript shows appellant's objection to the court's charge in submitting Special Issue No. 10 is based upon the premise that it was not conditionally submitted upon findings in Special Issues 8 and 9 and as worded is a comment upon the weight of the evidence. No points are submitted upon those grounds, and we find no objection in appellant's "Objections to Court's Charge" of the submission of the issue for the reason that it did not submit a proper measure of damages. Therefore, we must assume that ground of objection was waived. Rules 272 and 274, V.A.T.R.; Wilson v. King, 311 S.W.2d 957 (Tex.Civ. App.-Austin, 1958, writ ref'd); Minugh v. Royal Crown Bottling Co., 267 S.W.2d 861 (Tex.Civ.App.-San Antonio, 1954, writ ref'd); Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979 (1948).

■ With respect to Point 18, concerning proof of a proper measure of damages, Southwestern introduced into evidence its business record of the itemized expenses incident to installation of the proper skylights after they were delivered. It shows on its face to be for "new skylights over and above original skylight purchase," and Southwestern's Mr. Allen testified the record reflected the actual expenses incurred in replacing the second set. There is not any controversy in the record but that such expenses were incurred as a result of the

installation in the Central Foods Building at Texas Technological College, which we may take judicial knowledge is at Lubbock, and Mr. Allen testified they were necessary and reasonable. The measure of damages proven were the actual damages incurred as a result of appellant's negligence in drawing incorrect plans and specifications. Even if the court did not require more detail in showing the damages Southwestern suffered as a result of appellant's negligence, it was not of a nature to justify reversing the case. Rule 434, V.A.T.R.

The last ten pages of appellant's brief is devoted to its argument that the judgment of the trial court is fundamentally erroneous, yet no point is asserted in that connection.

Rule 418, V.A.T.R., provides in part as follows: "The brief for appellant should contain * * * (b) A statement of the points upon which the appeal is predicated, separately numbered in short form and without argument, * * *."

■ We do not believe the argument on the point of law of fundamental error requires us to give consideration to the argument, even though Lubbock Glass and Southwestern have answered it in their brief. We are familiar with the statement by the Supreme Court of Texas in McKelvy v. Barber, 381 S.W.2d 59 (Tex.1964) as follows: "After a point of law has thus been briefed by all parties *and decided by the Court of Civil Appeals*, we think it should be treated as having been properly presented for decision at the intermediate court level even though not raised by a formal point of error in the appellant's brief." (Emphasis added.)

We do not believe under Rule 418 and the statement just quoted that we are required to decide the point and do not choose to discuss it. Anyhow, a reading of the pleadings shows such discussion would avail appellant nothing.

■ In a supplementary transcript it was stipulated by the parties that the sum

of $500 is a reasonable and necessary amount of attorneys' fees for the services rendered by the attorneys for Lubbock Glass if they are entitled to attorneys' fees. Since no point is before us on the right of recovery and no contention made in the briefs on attorneys' fees, we may assume the question is waived. Rule 418; McKelvy v. Barber, supra. We are not to be understood by such holding that we would, if the point was properly raised, hold that attorneys' fees are recoverable.

Accordingly, the judgment of the trial court is in all things affirmed.