## No. C-1282

## Wheeler & Lewis v. Cecil S. Slifer

(577 P.2d 1092)

Decided April 24, 1978.                    Rehearing denied May 15, 1978.

Margaret Bates Ellison, for petitioner.

Fischer & Wilmarth, Elery Wilmarth, G. William Beardslee, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review *Slifer v. Wheeler & Lewis,* 39 Colo. App. 269, 567 P.2d 388 (1977). We reverse and remand with directions.

On July 14, 1969, Wheeler & Lewis (Architects), the petitioners, and Poudre School District #R-1 (District) executed a contract for various services required in connection with the planning and construction of several buildings in the Fort Collins area. The Architects designed a new high school building pursuant to the contract, and the District, thereafter, engaged the G. E. Johnson Construction Company as the general contractor for the project. The general contractor, in turn, subcontracted with Rocky Mountain Prestress, Inc. for the fabrication and erection of all structural members of the high school building.

Cecil Slifer, the respondent, was employed by Rocky Mountain Prestress, Inc., as a welder-carpenter on the high school project. On June 3, 1972, Slifer suffered severe injuries to the heels of his feet when the section of roof upon which he was working collapsed. The evidence

presented at trial established that the accident resulted from insufficient bracing and shoring of the roof.

Slifer subsequently initiated this action against the Architects to recover damages for the injuries which he sustained. Trial to a jury resulted in a verdict in Slifer's favor. The trial court thereafter entered a judgment notwithstanding the verdict in favor of the Architects. The court of appeals reversed on the ground that the Architects owed a duty to Slifer and asserted that the record contained sufficient evidence to support the jury's conclusion that the duty had been breached.

The Architects' liability in this case was premised upon the breach of a contractual duty owed by the Architects to the workmen engaged at the construction site. Slifer contended, and the court of appeals held, that the contract between the Architects and the District and the contract between the District and the general contractor imposed the duty upon the Architects "to see that reasonable precautions were taken in protecting the workmen on the site from unsafe conditions." We disagree.

■ A split of authority exists among the jurisdictions which have considered whether an architect, contractually responsible for supervision of a construction project, is liable for injuries sustained by workmen as a result of unsafe working conditions. *See* Annot., 59 A.L.R.3d 869 (1974); AIA, *Legal Citator of Building and Construction Contracts*; AIA, *Architects Handbook of Professional Practice;* K. Davidson, *The Liability of Architects,* 13 TRIAL 20 (June 1977). Several courts have held that architects have extensive supervisory duties and have imposed liability. *Swarthout v. Beard,* 33 Mich. App. 395, 190 N.W.2d 373 (1971), *rev'd on other grounds,* 388 Mich. 637, 202 N.W.2d 300 (1972); *Miller v. DeWitt,* 37 Ill.2d 273, 226 N.E.2d 630 (1967). We, however, believe the better rule is found in those jurisdictions which have refused to impose liability absent a clear assumption of duty. *Krieger v. J. E. Greiner Co., Inc.,* 282 Md. 50, 382 A.2d 1069; *Walters v. Kellam & Foley,* _____Ind. App. _____, 360 N.E.2d 199 (1977); *Brown v. Gamble Construction Co., Inc.,* 537 S.W.2d 685 (Mo. App. 1976); *Vonasek v. Hirsch and Stevens, Inc.,* 65 Wis.2d 1, 221 N.W.2d 815 (1974); *Seeney v. Dover Country Club Apartments, Inc.,* _____Del. _____, 318 A.2d 619 (1974); *Jackson v. Sergent, Hauskins & Beckwith Engineers, Inc.,* 20 Ariz. App. 330, 512 P.2d 862 (1973); *Reber v. Chandler High School District # 202,* 13 Ariz. App. 133, 474 P.2d 852 (1970); *Walker v. Wittenberg, Delony & Davidson, Inc.,* 241 Ark. 525, 412 S.W.2d 621 (1966), *reh granted,* 242 Ark. 97, 412 S.W.2d 621, 626 (1967); *Day v. National United States Radiator Corp.,* 241 La. 288, 128 So.2d 660 (1961).

The relevant contractual provisions in this case provided:
*"Architects-District Contract*

. . . .

"2. *SERVICES OF THE ARCHITECTS*. The Architects agree to furnish all architectural services; engineering services, except as mentioned in Paragraph 3 (c) herein; and supervisory services needed in connection with the planning and construction of the work, all as more fully set forth hereafter:

. . . .

"(k) The Architects shall supervise the construction of the work in such manner as to assure the District performance of all contracts in accordance with the terms thereof; and the Architects shall exercise due diligence so that the construction shall be strictly in accordance with the final approved plans and specifications or any authorized changes thereto, of good workmanship and of materials of the kinds specified in each instance. The Architects shall personally devote whatever time is necessary adequately to supervise the construction of the work to the entire satisfaction of the District. No clerk-of-the-works shall be required.

. . . .

"6. *NON-GUARANTEE*. The Architects do not guarantee the performance of contracts for the work or their estimates of cost. . . .
*"District-General Contractor Contract*

. . . .

*"ARTICLE 12. PROTECTION OF WORK AND PROPERTY*

. . . .

"The Contractor shall take all necessary precautions for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State and Municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and properly maintain at all times, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen and the public and shall post danger signs warning against the hazards created by such features of construction as protruding nails, hoists, well holes, elevator hatchways, scaffolding, window openings, stairways and falling materials; and he shall designate a responsible member of his organization on the work whose duty shall be the prevention of accidents. The name and position of any person so designated shall be reported to the Architect by the Contractor.

. . . .

*"ARTICLE 36. ARCHITECT'S STATUS: ARTICHITECT'S SUPERVISION*
"The Architect shall be the Owner's representative during the construction period. The Architect will make periodic visits to the site to familiarize himself generally with the progress and quality of the work and to determine in general if the work is proceeding in accordance with the Contract Documents. He will not be required to make exhaustive or

continuous on-site inspections to check the quality or quantity of the work and he will not be responsible for the Contractor's failure to carry out the construction work in accordance with the Contract Documents. During such visits and on the basis of his observations while at the site, he will keep the Owner informed of the progress of the work, will endeavor to guard the Owner against defects and deficiencies in the work of Contractor; and he may condemn work as failing to conform to the Contract Documents. He shall have authority to act on behalf of the Owner only to the extent expressly provided in the Contract Documents or otherwise in writing, which shall be shown to the Contractor. He shall have authority to stop the work whenever such stoppage may be necessary in his reasonable opinion to insure the proper execution of the Contract."

The court of appeals concluded that the contracts imposed the duty upon the Architects to stop the work if necessary to enforce the provisions of the contract between the district and the general contractor. Since the duty to "take all necessary precautions for the safety of employees on the work" was included in the provisions of the general contractor's contract, the court held that the architect had the duty "to supervise erection of the building so as to ensure that the same would be accomplished in a reasonably safe manner."

We conclude, as a matter of law, however, that the terms of both contracts are unambiguous and insufficient to support a conclusion that the parties intended the Architects have the duty of supervising the method and manner of construction to insure that the work be performed safely. The provisions, when considered in the context of the entire contract, merely evidence an intention that the Architects exercise such supervision as is necessary to assure that the work comply with the plans and specifications prepared by the Architects.

The court in *Walker v. Wittenberg, Delony & Davidson, Inc., supra,* considered similar contractual provisions and concluded:
"When the architect's status under Article 38, providing that he 'is the agent of the Owner only to the extent provided in the Contract Documents * * *,' is read in connection with the safety provision of Article 12, it is at once apparent the architect was given no authority over the safety provisions except to see that the contractor designated a responsible employee whose duty was prevention of accidents and whose name and position were reported to the architect.
"Construing the architect's agreement with the owner in the light of the circumstances under which it was made, the contract between the owner and the contractor, requiring the contractor to designate someone in his organization whose duty was prevention of accidents, certainly indicates the owner was not expecting the architect to also supervise day-to-day safety precautions. This is illustrated by the fact that the contract required the name of the person so designated to be reported to the architect, and

by the fact that the owner, by requiring the contractor to furnish a person to prevent accidents, had already paid once for the prevention of accidents in his building contract. . . ."

The analysis found in *Walker v. Wittenberg, Delony & Davidson, Inc., supra,* is applicable to this case and is consistent with the respective duties imposed upon the Architects and general contractor.

■ Additional evidence of the parties' intent is found in the contractual provisions that the Architects did not guarantee the performance of contracts for work and would not be responsible for a contractor's failure to carry out the construction work in accordance with the contractual documents. These provisions negate the contention that the Architects agreed to supervise and ensure the performance of each detailed provision of the contractor's contract. The Architects' authority to stop the work whenever necessary to ensure the proper execution of the contracts, in the context of the entire contract, is, therefore, inconsistent with the imposition of a duty to supervise and stop construction if the method of construction might be unsafe.

Courts in other jurisdictions, however, have held that the right to stop work imposes a duty upon the supervising architect to stop the work if the safety of workmen might be endangered. *Miller v. DeWitt, supra.* We reject the *Miller v. DeWitt* interpretation and agree with the court's discussion of such cases in *Reber v. Chandler High School District # 202, supra:*

"In our opinion these cases have disregarded fundamental contractual principles in attempting to parlay general inspection or supervision clauses which give the owner or architect a *right* to stop observed unsafe construction processes into a *duty* which is neither consistent with generally accepted usage or contemplated by the contract or the parties. . . ." (Emphasis in original.)

■ The limited nature of the Architects' duty of supervision is supported by the express contractual provision that the Architects were not required to provide the detailed supervision that would have been necessary had a "clerk-of-the-works" been required. The general rule applicable to the Architects' contractual duty in this case was stated in *Day v. National United States Radiator Corp., supra:*

"As we view the matter, the primary object of this provision was to impose the duty or obligation on the architects to insure to the owner that before final acceptance of the work the building would be completed in accordance with the plans and specifications; and to insure this result the architects were to make 'frequent visits to the work site' during the progress of the work. Under the contract they as architects had no duty to supervise the contractor's method of doing the work. In fact, as architects they had no power of control over the contractor's method of performing his contract, unless such power was provided for in the specifications. Their

duty to the owner was to see that before final acceptance of the work the plans and specifications had been complied with, that proper materials had been used, and generally that the owner secured the building it had contracted for."

The contractual provisions in this case, considered in the context of the entire contract, do not support a conclusion that the Architects had the duty to supervise the methods and details of construction to ensure the safety of the workmen on the site. The duty of supervision in this case is more consonant with the intention that the Architects exercise such supervision as is necessary to ensure that the contractor's work complies with the plans and specifications prepared by the Architects. Before an architect will be held to have agreed to exercise direct control over a contractor with respect to day-to-day safety precautions, the duty must clearly appear in the contract.

Since the Architects, as a matter of law, had no duty to supervise the construction precautions taken for the safety of the workmen, the trial court properly entered a judgment notwithstanding the verdict. C.R.C.P. 50(b).

Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals with directions to reinstate the trial court's judgment for the defendant notwithstanding the verdict.

MR. JUSTICE GROVES does not participate.

MR. JUSTICE CARRIGAN dissents.