**BERNARD JOHNSON, INC., Appellant,**

v.

**CONTINENTAL CONSTRUCTORS, INC., Appellee.**

No. 13522.

Court of Appeals of Texas, Austin.

Feb. 10, 1982.

Rehearing Denied April 4, 1982.

John T. Anderson, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellant.

Chris C. Pappas, Wyckoff, Russell, Dunn & Frazier, Houston, for appellee.

POWERS, Justice.

Appellee, Continental Constructors, Inc., sued, in Travis County, Texas, the Texas Parks and Wildlife Department and appellant Bernard Johnson, Inc. The suit arose out of appellee's construction of a bulkhead at Lake Livingston, Texas under a contract between appellee and the Department. The contract called for construction of the bulkhead to plans and specifications prepared by appellant and contained other provisions which allegedly gave appellant certain powers and duties as "the architect/engineer."

Appellant interposed a plea of privilege to be sued in Harris County, its "residence" for venue purposes. Tex.Rev.Civ.Stat.Ann. art. 1995 (1964). The "residence" of the Department, for venue purposes, is Travis County.

The trial court denied appellant's plea of privilege after hearing and sustained appellee's controverting plea to the effect that venue in Travis County was proper as to both defendants under exception four of article 1995. That exception provides, rather simply for our purposes, that if two defendants reside in different counties, suit may be brought in the county where either defendant resides. Appellee proved a *prima facie* case against the Department, a "resident" of Travis County, and contends appellant must, therefore, under exception four, submit to venue in the county. Appellant resists based upon the interpretation given exception four in *Stockyards National Bank v. Maples*, 127 Tex. 633, 95 S.W.2d 1300 (1936).

Appellant admits appellee was not required to establish, by extrinsic evidence, a *prima facie* case against appellant, the nonresident defendant; rather, the issue of venue in the present circumstances must be determined solely upon this proposition of law: Do the *allegations* of appellee's petition and controverting plea show a cause of action against appellant which is either: (1) a joint claim against the appellant and the Department; or (2) a cause of action growing out of the same transaction and so intimately connected with the claim against the Department that the two should be joined under "the rule intended to avoid a multiplicity of suits?" *Id.*

An examination of appellee's controverting plea reveals that it incorporates by reference all the allegations contained in appellee's petition. The petition, in turn, asserts against the Department, the resident defendant, two causes of action in contract: (1) appellee fully performed the bulkhead contract and its work thereunder had been finally accepted by the Department; the completion of the work required extra fill material which appellee supplied; the bulkhead contract expressly required the Department to pay for the extra material; and, the Department breached the bulkhead contract by refusing to pay for it; and (2) the bulkhead failed, although built to contract plans and specifications, whereupon the Department requested that appellee re-

build it; an unnamed agent or representative of the Department represented that the Department would pay for the rebuilding; appellee rebuilt the bulkhead; and, the Department breached this concomitant oral contract by refusing to pay the reasonable value of appellee's work in making the requested repairs.

With respect to the claims alleged by appellee against appellant, the non-resident defendant, the petition reveals an intent to allege a cause of action in negligence and one for breach of contract.

In setting forth its claim of negligence, appellee makes the following allegations: appellant was engaged by the Department to serve as architect on the bulkhead project; appellant prepared the pertinent plans and specifications; under the terms of the bulkhead contract, appellant was made responsible for the general administration of the contract as the "representative" of the Department during construction; and, appellant was negligent, the negligence being alleged in the following words:

> Plaintiff would show that said Defendant failed to properly administer the Bulkhead Project. Due to the failure of said Defendant to properly process the change orders and administer said Project, Plaintiff suffered extensive delays and the increased costs resulting therefrom. Said Defendant abrogated its responsibilities in supervising and administering the Bulkhead Project. The acts and/or omissions on the part of said Defendant constitute negligence as that term is understood in law. Such negligence proximately caused Plaintiff's damages, which Plaintiff would show greatly exceed the minimum jurisdictional limits of this court.

Appellee's claim for breach of contract is stated as follows:

Pleading further, and in the alternative, Plaintiff would show that the Defendant, Bernard Johnson, Incorporated, failed to perform the responsibilities delegated to it under the Bulkhead Contract. Specifically, said Defendant failed to properly supervise and administer the Bulkhead Project. As a result of such failure, said Defendant breached said contract thereby causing Plaintiff's damages as herein referenced.

Appellee does not contend appellant became generally liable on the contract between appellee and the Department. Nor does appellee contend appellant became contractually bound to appellee by virtue of an express contract between them. Rather, appellee claims that because appellant furnished the "job specifications" and assumed the obligations specifically assigned to appellant in the express contract between appellee and the Department, appellant thereby became *contractually* bound in favor of appellee to perform those obligations without negligence. Thus, so far as we are able to determine from appellee's briefs and rather indistinct allegations, appellee's claim is ultimately one for negligence only; the duty to avoid such negligence being said, however, to have an origin either (1) in the express contract made between appellee and the Department, or (2) in the common law of negligence.[1]

Essential to showing any "cause of action," that is, a claim cognizable in the courts of our State, are allegations sufficient to invoke a rule of substantive law which, under the circumstances alleged, vests in the plaintiff a right and imposes upon the defendant a corresponding duty which he has breached. *MacDonald v. Trammell*, 163 Tex. 352, 356 S.W.2d 143 (1962); *Phoenix Lumber Co. v. Houston Water Co.*, 94 Tex. 456, 61 S.W. 707 (1901); Tex.R.Civ.P. 45, 47; 1 McDonald, *Texas*

---

1. One is hard put to understand what appellee intends by its argument that appellant, by *assuming* the duties assigned to it in the contract, thereby became liable in contract to appellee; and there is no citation for that proposition in appellee's briefs on appeal. There is nothing in appellant's allegations or briefs which suggests a promissory assumption of such duties in exchange for any form of consideration. No claim is made that appellant relied upon any relevant express or implied promise made by the appellant. We put the best face we can on appellee's pleading and briefs when we state the proposition in the text of the opinion.

Civil Practice § 2.02 (rev.1981); 2 *id.*, § 6.12. Whether the plaintiff's factual allegations set forth a right, a duty and a breach *cannot be determined except by reference to the substantive law.* We inquire first whether the requisite duty on appellant's part could have arisen by force of a contract to which he was admittedly not a party in the ordinary sense.

## A DUTY BASED UPON CONTRACT

■ The substance of appellee's allegations, when we liberally interpret them and supply every reasonable intendment, is that appellant failed to perform with the requi-

site degree of care, skill, expedience, and faithfulness, the matters which were assigned to appellant in the express contract between the Department and appellee. Appellee's brief refers to these contract provisions and quotes some of them in their entirety. It is inconceivable that appellee could maintain its action against appellant without proving at trial the contents of the bulkhead contract and the resulting duty said to be placed upon appellee therein. In such cases, any action is said to be in substance an action *on the contract,* even though it is denominated an action for negligent performance of the contract.[2] *Inter-*

2. We should, at this point, clarify several matters which bear upon the ultimate question of whether appellee's pleadings invoked a rule of the substantive law under which appellant could be liable to appellee.

Appellee's petition and controverting plea neither set forth nor refer to any provision in the bulkhead contract which places upon appellant a *specific* duty. In fact, the only specific act of negligence alleged by appellee is that appellant failed to properly "process" change orders. We assume for the purposes of discussion that the bulkhead contract required appellant to "process" such orders. The remaining allegations of negligence made by appellee are that appellant negligently performed its general contract duty to "supervise" and "administer" the bulkhead project. Because appellant failed to take special exception to the generality of these general claims of negligence, we are deprived of the valuable interpretative rule that the one specific allegation of negligence, respecting the "processing" of change orders, limits the more general allegations accordingly. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183 (Tex.1977).

Nevertheless, appellant objected at the venue hearing that there existed no contractual relationship between appellant and appellee, and claimed that any duty owed by appellant "runs" to the "State of Texas" (the Department). Appellant therefore did not try by consent those aspects of the "duty" question. *See Buchanan v. Jean,* 141 Tex. 401, 172 S.W.2d 688 (1943), evaluating in similar circumstances the plaintiff's controverting plea as to whether it "set out a cause of action" in trespass under exception nine of article 1995. We are tempted to remand the case for rehearing of the venue question because of the confused presentation of the issues before us, as was done in *Buchanan.* Nevertheless, we proceed as best we can under the allegations we have before us, primarily upon the basis that even under the very general allegations of negligence made by appellee, and supplying all reasonable intend-

ments, appellee has not set forth a cause of action so as to defeat appellant's statutory privilege to be sued in the county of its "residence."

The issue is not whether appellee has artfully pleaded a cause of action. For example, it is immaterial whether, as appellant suggests, appellee failed to allege an element of a cause of action for negligence. Rather, the issue is whether appellee's allegations, when taken as true, invoke a rule of substantive law which will afford relief to appellee for the wrong it attributes to appellant.

Under the rule of the *Stockyards* case, we may not consider the actual contract provisions in aid of appellee's allegations, although the contract itself was introduced in evidence at the venue hearing and is before us as part of the *prima facie* case proved against the Department, the resident defendant. The issue before us is one not of liability but venue, to be determined solely by reference to appellee's allegations. The practicality and justice of this aspect of *Stockyards* has been questioned and even ignored by some intermediate appellate courts. 1 McDonald, *supra,* § 4.10.1, at 353–354. ·

We note immediately that appellee alleges appellant's contractual obligations were assigned to it as "representative" of the Department, with the necessary implication that any duty in that connection was owed to the Department and intended for its benefit. Appellee also alleges that such responsibilities were "delegated" to appellant by the Department. We must assume the truth of these allegations. They are antithetical to appellant being a contracting party in the ordinary sense. Moreover, appellee's briefs make clear that it did not intend to allege appellant was such a party to the contract between appellee and the Department. The general thrust of appellee's allegations, liberally interpreted, is that appellant negligently exercised one or more of the supervisory powers sometimes assigned to architects in similar contracts. Such powers vary in kind and in

*national Printing Pressman & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729 (1947).

As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract, particularly a non-party who is assigned duties by the terms of the contract. *Jones v. George*, 61 Tex. 345 (1884); *Carruth v. Valley Ready-Mix Concrete Co.*, 221 S.W.2d 584 (Tex.Civ.App.—Eastland 1949, writ ref'd); 17A C.J.S. *Contracts* §§ 520, 522 (1963). As between the *contracting* parties themselves, it is well established that each owes a duty to the other to perform contractual obligations with care, skill, reasonable expedience and faithfulness, either personally or through one for whom the obliged party is responsible. A breach of duty in that case gives rise to a cause of action for negligence against the other contracting party. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947). Here, it is not alleged appellant was a "contracting party," though in appellee's briefs we are told appellant somehow became *contractually* obligated to appellee on at least some of the contract terms. We draw from appellee's sparse allegations that appellant was allegedly negligent in his capacity as "repre-sentative" of the Department. If appellant was indeed negligent in the performance of any duty assigned to it in the bulkhead contract, that negligence would be imputed to the Department. Then the Department would be liable therefore, just as Montgomery Ward & Co. was held liable for the repairman's negligence in his performance of the contractual obligation owed by Montgomery Ward & Co. in *Scharrenbeck*. This is not to say, however, that appellant would be liable for his own negligence because of *a duty said to arise from his contractual undertaking*. Appellant, not being a contracting party, promised nothing to appellee upon which could be erected the implication of law that *he also* promised to perform the contract provision without negligence.[3] Any such duty on appellant's part must therefore originate not in contract between others but in the common law.

It is well understood that a pertinent contract may have significance with respect to a duty relationship imposed and governed by the common law. For example, a plaintiff who is not a party to a contract may sue a defendant who is a contracting party. In answer, the defendant may plead that any duty he owes is one *created solely by his contract with another*, to whom alone the duty is owed; and, be-

---

degree. They sometimes vary in degree to such an extent that they are actually different in kind. We point, for example, to *Manett, Seastrunk & Buckner v. Terminal Bldg. Corp.*, 120 Tex. 374, 39 S.W.2d 1 (1931), where the contracting parties assigned to the architect specific and arbitrary powers, with a corollary provision which required that the architect be neutral and disinterested as between the contracting parties. On the other hand, the architect may actually be a mere consultant to one contracting party or the other, with no actual power at all over the work or the contracting parties. Other possible relationships between the architect, the work and the contracting parties are pointed out in the text of the opinion. In the present case, given the nature of appellee's allegations, it would be conjecture on our part to assume the existence of any particular kind of relationship and the existence of any specific power vested in appellant by the terms of the contract.

**3.** For breach of a duty imposed by the common law for the benefit or protection of the public at large, an employee or agent is held liable for his own negligence, notwithstanding that his negligence may be imputed to his employer or his principal under the doctrine of *respondeat superior*, making the latter liable as well. In this appeal, we deal with the original question of whether a duty is, or should be, imposed upon the actor, under negligence law; or, under contract law, whether such a duty was undertaken by the actor's contract.

The substantive law relating to breaches of contract, exists because of society's interest in having a person perform his promises, whether express or implied in fact or law. For this reason, actions for breach of contract are inherently possible against promissors only. The substantive law of negligence rests upon society's evaluation and conclusion that certain interests should be free from harm. Thus, negligence law formulates and sets rules of conduct which are enforced to protect such interests, ordinarily without reference to the will or intention of the affected parties.

cause no "privity of contract" exists between himself and the plaintiff, he owes no duty to the plaintiff upon which a cause of action may be predicated.[4] *Such is not the case before us.* In this instance, a *contracting party* (appellee) sues a defendant (appellant) who is *not* a party to the contract, founded upon a duty said to have arisen by virtue of contract provisions which required the non-party defendant to perform certain tasks. Appellee raises the pertinent contract as a sword to impose liability; appellant does not raise it as a shield from liability. Appellant does interpose "privity of contract" as a defense, but in a far different sense, saying in effect: "I was not a party to the contract upon which the plaintiff sues; therefore, I did not, by my promise, obligate myself to him respecting the duty upon which he sues." In other words, appellant contends, and we believe correctly, contractual duties may not be enforced, in these circumstances, against one who is not a party to the contract. *Jones v. George, supra; Carruth v. Valley Ready-Mix Concrete Co., supra*; 17A C.J.S., *supra.* Because appellant was not in legal contemplation a party to the contract, it owed no contract-based duty to appellee. However, viewed in its most favorable light, appellee's argument may also be viewed as contending for the proposition that there *ought* to be a common-law duty placed upon the appellant, even though it was not a contracting party, because appellant had, and affirmatively exercised, *contol* over appellee in the construction process by virtue of certain but unspecified contract provisions. Appellee's allegations, liberally interpreted, will allow the argument.

## A DUTY BASED UPON THE COMMON LAW

We know from the reported cases that building and construction contracts between

---

4. *House v. Houston Waterworks Co.*, 88 Tex. 233, 31 S.W. 179 (1895); *City of Wichita Falls v. Swartz*, 57 S.W.2d 236 (Tex.Civ.App.—Fort Worth 1932, no writ); 40 Tex.Jur.2d Rev., Part 2 *Negligence*, § 9 (1974).

The defense of "privity" is not permitted in suits for personal injury, whether founded upon a claim of negligence or upon a claim of strict liability, that is, liability without regard to fault. *Strakos v. Gehring*, 360 S.W.2d 787 (Tex.1962); *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex.1969); Restatement (Second) of Torts § 324A (1965). What then of suits seeking recovery for an economic injury such as the suit brought by appellee against one not a party to the contract?

It is obvious that any duty in such a case may not arise out of the contract between others, but it may reasonably be said that a contract between others has created a state of affairs where there *ought* to be a common law duty of care in favor of one who may be affected by the attendant acts or omissions of a contracting party. One Texas intermediate appellate court has held that an accountant, for example, may be liable to third parties for his negligent performance of a contractual duty owed to his client, and that "privity of contract" may not be interposed as a defense to such an action, brought to recover for an economic injury. *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.). The duty asserted in that case was demonstrably one originating in the common law, for the court specifically limited the scope of such liability to, and found its jurisprudential basis in, the provisions of the Restatement (Second) of Torts § 552 (1977) which delineates the duty and liability of one who furnishes business information to persons who may foreseeably rely upon the information. In truth, there was precedent in Texas for the holding under the doctrine of innocent misrepresentation, as pointed out in Note, *Torts—Professional Negligence—Accountants May be Liable to Third Parties for Negligence*, 50 Texas L.Rev. 411 (1972). "Privity of contract" survives undiminished as a defense in favor of lawyers sued by third parties for economic injury said to have been proximately caused by the lawyer's negligent performance under his contract with his client. *Bell v. Manning*, 613 S.W.2d 335 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r. e.); *Bryan & Amidei v. Law*, 435 S.W.2d 587 (Tex.Civ.App.—Fort Worth 1968, no writ); *Martin v. Trevino*, 578 S.W.2d 763 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); Note, *Attorney-Client—Negligence—An Attorney May be Liable to Third Parties for Malpractice Without Privity of Contract, Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), 40 Texas L.Rev. 1046 (1962). The defense of "privity of contract" having been established by the common law, it obviously may be abolished by statute or by the common law. When the defense is judicially abolished, the task is done carefully and under a rationale founded upon public policy. *Id.* We do not find that the Texas Supreme Court has generally abolished the doctrine in suits brought by third parties based upon the negligent performance of a contract duty.

an owner (the Department here) and a contractor (appellee here), may vary greatly in the powers and duties assigned to a supervising architect by agreement of the contracting parties. The architect's authority in connection with the parties and the work varies accordingly.[5]

If *any* generality can be expressed with respect to the capacity assigned to the supervising architect by the contracting parties, it might perhaps be this:

> The duty of the architect is to protect the owner to the end that the quality of the workmanship that goes into the project, and the kind and quality of the materials that are used, will be in accordance with the plans and specifications upon which the owner and architect have agreed. These undertakings by the architect are not designed to protect and enhance the profit or any other interest of the contractor. The fact that a contractor will benefit and profit from plans that are carefully and professionally drawn, and from specifications that are clear and precise, is an incidental benefit that accrues to the contractor.

*Valley Landscape Co., Inc. v. Rolland*, 218 Va. 257, 237 S.E.2d 120, 122–123 (1977). In other words, *generally speaking*, any duty or power assigned to the architect in the building contract is for the benefit of the owner who employed the architect.

Courts in some jurisdictions have judicially imposed upon architects a duty of ordinary care in favor of the contractor. These courts have done so based upon the power over the contractor said to be possessed by the architect. We find some of these cases lacking in logical analysis; particularly because they ignore what seems to us a fundamental proposition: the architect's relation to the parties and the work is one specified by the contracting parties in their bargained-for agreement.[6] So long as the

---

**5.** *See, Lonergan v. San Antonio Loan & Trust Co.*, 101 Tex. 63, 104 S.W. 1061 (1907) (implying that the architect was merely a consultant to, and representative of, the owner and acted for his benefit solely, and not for the benefit of others interested in the work); *Manett, Seastrunk & Buckner v. Terminal Building Corp.*, *supra* (setting forth the other extreme where the architect was expressly required to be a neutral and disinterested arbiter with large discretionary powers in relation to the construction work); *City of San Antonio v. McKenzie Construction Co.*, 136 Tex. 315, 150 S.W.2d 989 (1941) (where the contract between the owner and the contractor assigned to an engineer the power of arbitration and decision-making in numerous particulars involving the construction work, the court holding that the engineer's duty to *make a decision* is owed to both contracting parties, and the engineer's failure to make a decision, when requested to do so, does not prohibit by estoppel his making a later decision, and such later decision may not be set aside in judicial review of his conduct, so as to allow recovery by the contractor against the owner, except on a showing that the decision was the result of fraud, misconduct or such gross mistake as would imply bad faith on the part of the architect).

**6.** See, e.g., *A. R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973) (holding in answer to a certified question that the architect had the requisite duty as a corollary to the power of direct supervision and control belonging to the architect, without reference to the degree of such control or the nature of it as established by agreement of the contractor and the owner); *Conforti & Eisele, Inc. v. John C. Morris Assoc.*, 175 N.J.Super. 341, 418 A.2d 1290 (1980) (imposing the duty upon a "design professional" apparently upon the sole ground of his status, but with stated assumptions which may indicate an unarticulated reliance upon the cause of action, based upon the affirmative and voluntary assumption of a duty, set out in Restatement (Second) of Torts § 323 or 324 (1965)); *Normoyle-Berg & Assoc. v. Village of Deer Creek*, 39 Ill.App.3d 744, 350 N.E.2d 559 (1976) (apparently based solely upon the status of the engineer and without reference to his powers and duties under the contract), as was the case in *Detweiler Bros., Inc. v. John Graham & Co.*, 412 F.Supp. 416 (E.D.Wash.1976); and, *Davidson & Jones v. County of New Hanover*, 41 N.C.App. 661, 255 S.E.2d 580 (1979) (based upon the working relationship of the contractor and architect, but without reference to the building contract, it not having been pleaded in the case).

In contrast, the following decisions make at least some inquiry into the role assigned to the architect by the contracting parties: *Krieger v. J. E. Greiner Co., Inc.*, 282 Md. 50, 382 A.2d 1069 (1978) and *Vonasek v. Hirsch & Stevens, Inc.*, 65 Wis.2d 1, 221 N.W.2d 815 (1974), both of which looked to the contract to determine if the architect had been assigned a duty in favor of the plaintiff with respect to the specific wrong complained of by him; and, *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 222 N.E.2d 752 (1967), looking to two separate con-

contracting parties have freedom to contract as they wish, with respect to the architect's power and role, these will vary considerably and no rule of general applicability may logically be stated which is founded simply upon the status of the defendant as "an architect" or upon what one believes to be the customary relationship between the work, the architect, the owner and the contractor; particularly a general

rule should not be founded upon a presumption that the architect has power over the contractor's performance, in general or in any particular of the work.

Appellee argues that a duty should be imposed upon architects as a just corollary to the control they exert over contractors, citing *A. R. Moyer, Inc. v. Graham, supra,* and *United States v. Rogers & Rogers,* 161 F.Supp. 132 (S.D.Cal.1958).[7]

tracts to determine if any provisions reflected a duty assumed by the architect and holding the architect liable in negligence on the basis that it was reasonably foreseeable that the contractor would rely upon the architect's non-negligent performance of a duty assigned to him in the contract.
*Associated Architects & Eng'rs. v. Lubbock Glass & Mirror Co.,* 422 S.W.2d 942 (Tex.Civ. App.—Amarillo 1967, writ ref'd n. r. e.), involved two claims of negligence brought against the architect by a sub-contractor, the first for negligence in the preparation of plans and specifications and the second for negligence in rejecting skylights furnished according to the architect's defective plans and specifications, the claims being allowed seemingly as a matter of course and with no discussion of the duty question, unless that be the point the court declined to discuss because not preserved by point of error. In *I. O. I. Systems, Inc. v. City of Cleveland,* 615 S.W.2d 786 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r. e.), the court referred to the duty issue with the comment that the engineer's duty depends upon "the particular agreement entered into with his employer," that is, the contract between the engineer and the owner. The court suspended the discussion with the comment that the contractor failed to offer evidence that the engineer was unreasonable under the circumstances, or not in compliance with the skill and requirements of registered engineers.
The text writers differ widely in the importance they would assign to the contract provisions agreed upon by the owner and the contractor, with respect to the architect's powers and duties, particularly the resulting "control" he has in the circumstances in which the contractor's economic injury is alleged to have occurred. The writer's opinions vary from ignoring the contract provisions altogether to giving them controlling effect. *Compare* Davidson, *The Liability of Architects,* 13 Trial 6, 22 (June 1977) and Allen, *Liability of Architects and Engineers to Third Parties,* 22 Ark.L.Rev. 454 (1968), taking these opposing positions. Some propose an orchestration of various factors, including the applicable contract provisions. J. Acret, *Architects and Engineers: Their Professional Responsibilities,* §§ 10.2 & 10.3 (1977); Earley, *Liability of Architects and Engineers to Third Parties: A New-Approach,* 53 Notre

Dame Law. 306, 318 (1977). A well-reasoned article is *Architectural Malpractice: A Contract-Based Approach,* 92 Harv.L.Rev. 1075 (1979) recognizing the variety of relationships possible between the owner, the contractor and the architect, the different role often assigned to the architect in recent times, the insufficiency of assigning to the architect a stereotype based upon conjecture and suggesting that since "architectural relationships take so many forms, it is much more appropriate to allocate risks on the basis of the parties' contracts as modified by their later conduct." The writer of this article advocates allowing the contractor a cause of action for negligence in two situations: (1) where the architect breaches the duty of care imposed upon him in his performance of a provision contained in the *architect's contract with the owner,* when it is reasonably foreseeable that the contractor would rely upon *that* undertaking by the architect; and (2) where the architect, *by his conduct,* assumes a responsibility, wherein it is reasonably foreseeable that the contractor would rely upon the non-negligent performance of that undertaking by the architect. *Id.,* at 1085–86.
In the present case, we note from appellee's allegations that it does not rely in any way upon any contract provisions contained in an agreement between the Department and appellant. In fact, appellee does not mention the terms of that contract nor otherwise refer to it.

7. In the latter case, the court stated:
Considerations of reason and policy impel the conclusion that the position and authority of a supervising architect are such that he ought to labor under a duty to the prime contractor to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner.... Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed (under such a duty). The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.

Appellee's brief informs us that the contract gave appellant duties which "allowed the architect great latitude in controlling the labor force on the Bulkhead Project." Appellee quotes five provisions from the contract between the Department and appellee which are claimed to illustrate this kind of working relationship between the contracting parties and the appellant. As mentioned earlier, we may not, in this venue appeal, consider the provisions of this contract, introduced to prove a *prima facie* case against the resident defendant, the Department. The *Stockyards* case prohibits our doing so.[8]

Nevertheless, appellee's brief makes sufficiently clear the intention of its pleadings of negligence against appellant. The intention was to invoke a rule of the common law—one admittedly not yet promulgated by the Supreme Court of Texas—which would hold that an architect owes a duty of care to a contractor, who labors under a contract between himself and the owner, when the contract assigns to the architect the general supervision and administration of the project as representative of the owner, but the architect is not himself a contracting party. Similarly, appellee's brief makes clear its contention that the duty argued for by it need not be connected to any specific power assigned to the architect in the contract.[9] The sum and substance of appellee's argument is founded upon this essential but unarticulated syllogism:

All architects control the work of the contractor; appellant is an architect; therefore, appellant controlled the contractor's work on the bulkhead project.

From the control so deduced, appellee urges this Court to make the legal determination that a duty should be placed upon appellant and architects generally, based perhaps upon the social, economic, and mor-

---

161 F.Supp. at 135–136. *But see* 92 Harv.L. Rev., at 1085 (criticizing *Rogers & Rogers* ).

**8.** Appellee quotes provisions which incorporate into the contract documents the appellant's plans and specifications; require the appellant to approve, with the owner, any samples and shop drawings required by the contract documents; make the appellant the owner's representative during construction, with authority to act for the owner to the extent provided in the contract documents, unless otherwise modified by written instrument which shall be *shown* to the contractor (appellant); provide that the appellant "will advise and consult with the owner and all the owner's instructions to (the contractor will) be issued through (appellant); and provide that the appellant shall verify the substantial completion of the project, following which the *owner* will within ten calendar days make a final inspection and when the work is found acceptable under the contract documents, and the contract is fully performed, the owner will make a final payment.

Were we to give any weight to the provisions of the contract between the Department and appellee, which we may not do, we would find that, in its entirety, it assigns approximately nine specific matters to the attention of the architect (appellant), only three of which give the architect any power at all over the contractor (appellee); and that these powers are insubstantial or bear no connection whatever to the circumstances alleged to have given rise to appellee's injury. Otherwise, within its four corners, the contract unquestionably makes the appellant the representative of the Department to do what the Department itself could do as a contracting party, and in each instance where the appellant is assigned a right or duty, it is manifest that he exercises it for the protection or accommodation of the Department only. There is nothing in the contract suggesting a power in the appellant to stop the work or any part of it. Moreover, the contract expressly makes the appellee itself "solely responsible for all construction means, methods, techniques, sequences and procedure, and for coordinating all portions of the work." The contract between appellant and the Department is not by reference incorporated in the contract between appellee and the Department, despite appellee's assertion to the contrary.

The rationale of *United States v. Rogers & Rogers, supra,* is therefore not applicable to the present case, for any power actually given appellant here is severely limited and unrelated to the circumstances alleged. More importantly, were we to give any weight to that contract, it must entirely refute the claim in appellee's brief that the appellant was allowed "great latitude in controlling the labor force on the Bulkhead Project" and entirely subvert appellee's argument for a new rule of the common law based upon an architect's control of the work, at least insofar as the contract here involved is advanced as an illustration of the kind of control said to necessitate the new common law rule.

**9.** Any negligence with respect to processing change orders is manifestly a claim founded solely upon a contract-based duty.

al grounds sometimes cited in decisions in other jurisdictions as justification for imposing such a duty. Appellee's reasoning ignores the allegation contained in its own pleading that any supervisory or administrative authority assigned to the appellant in this case, and exercised by it, was in appellant's capacity as representative of the owner, without explaining why appellee should not be bound by that expression of contractual intent. More importantly, however, appellee's reasoning in its brief, and in the conclusion it would have us reach, ignores the proposition that its major premise ("all architects control the work of the contractor") can never be universally true. The contracting parties, if they assign any power at all to the architect, may assign any kind or degree of control they deem necessary or desirable in the circumstances. Appellant's reasoning is therefore unconvincing.

As indicated previously, some jurisdictions have adopted appellee's theory and, apparently, have even promulgated a general rule that architects, based merely upon their *status* as architects, or based upon the stereotype of architects held by the court, owe a duty of care to the contractor in the circumstances we have before us in this case. We find no such rule of substantive law in the jurisprudence of our State. We may not promulgate it ourselves, as discussed below.

We do not see how a rule of general application may be stated of the kind argued for by appellee. When shall the amount and kind of control be deemed sufficient to impose the duty? May *any* kind or degree of control in a particular contract be sufficient, no matter how minimal or unrelated to the injury alleged? Any such rule of general application, based upon an assumed general control of the architect over the contractor, must invariably result in an injustice in a particular case when the contract assigns no control to the architect with respect to a particular aspect of the contractor's work wherein the injury occurs, but the architect is, nevertheless, held to a general duty said to be founded upon and justified by the existence of his power over the contractor.

Of course, the architect's opportunities for negligence increase proportionately in cases where the architect is given plenary power over the contractor, as in a provision which assigns to an architect the power to prescribe the means, methods, techniques, sequences and procedure of construction and to coordinate all parts of the work. Even then, however, the bedrock questions remain: did the contracting parties assign such plenary power to the architect for the benefit of the owner only or for both contracting parties; or, should a duty of care be imposed upon the architect in favor of the contractor notwithstanding the intentions of the contracting parties?

We readily concede that possession of a power, of one kind or another, may furnish a jurisprudential basis for imposing upon the one so empowered a corresponding duty of exercising it with ordinary care toward those upon whom it works. See generally, M. Shapo, *The Duty to Act* (1977). In the case before us, however, as made by appellee's allegations, it is specifically alleged that appellant was, under the terms of the bulkhead contract, made the "representative" of the Department. We see no public policy reasons why the contracting parties may not so limit or qualify appellant's relationship to themselves and to the work and why we should not so interpret any power relied upon appellee as a basis for its claim. Therefore, even if appellee's pleadings may reasonably be interpreted as implying a specific or general power assigned to appellant, which power is relevant to the specific circumstances giving rise to appellee's injuries (which we do not believe the allegations are sufficient to do), that power was qualified so as to be for the accommodation and protection of the Department and not for the benefit of appellee.

Though not raised by the parties, we point out that it is possible for one to incur a duty of care toward another, in certain circumstances, simply by the former's embarking upon an undertaking. Restatement (Second) of Torts §§ 323, 324A

(1965).[10] Our Supreme Court has imposed the requirement, however, that a cause of action for negligence does not exist in such circumstances unless the affirmative undertaking is pursued *for the benefit of the one injured* by its negligent performance; and, the additional requirement that the injured person must have suffered injury not from the negligence merely but *from his reliance upon the undertaking. Colonial Savings Association v. Taylor,* 544 S.W.2d 116 (Tex. 1976). Given the allegations made by appellee, it would be pure conjecture and therefore unreasonable for us to conclude appellee intended to plead such a cause of action. While we would assume a missing element of any cause of action inartfully pleaded, we do not believe we can reasonably assume every element of a cause of action antithetical to the pleadings.

With respect then to appellee's allegations of negligence, we hold that its allegations did not invoke a rule of substantive law, applicable to the circumstances, which rule vests in the appellee a right and imposes upon the defendant a corresponding duty.

As an additional ground for our holding that appellee's allegations have not invoked a rule of the substantive law which places in appellee a right, and in appellant a corresponding duty, we cite the proper role of this intermediate appellate court, insofar as appellee requests us to create a new duty of the kind contended for by appellee. This Court may not exercise the raw judicial power necessary to create a new duty and a new cause of action in the circumstances alleged, where the Supreme Court of Texas has established and never revoked contrary legal principles, there being no applicable statute which either authorizes the action or otherwise disestablishes such principles. *Humble Oil & Refining Co. v. State,* 158 S.W.2d 336 (Tex.Civ.App.—Austin 1942, writ ref'd). It is our duty under the common law doctrine of *stare decisis,* as it was the duty of the trial court, to follow the decisions of the Supreme Court of Texas which are directly on point, *viz.* (1) If the action is not maintainable without pleading and proving the contract, and the gist of the action is for breach of the contract, either by malfeasance or nonfeasance, it is in substance an action for negligence in the performance of the contract; *International Printing Pressmen & Assistants' Union v. Smith, supra;* (2) a suit for breach of contract may not be maintained against a person who is not a party to the contract; *Jones v. George, supra; Carruth v. Valley Ready-Mix Concrete Co., supra;* and (3) if, in the circumstances alleged, the law imposes no duty upon the defendant for the protection of the plaintiff, any act or omission by the defendant does not amount to actionable negligence. *Denison Light & Power Co. v. Patton,* 105 Tex. 621, 154 S.W. 540 (1913).

We believe the foregoing established principles defeat the possibility of any cause of action, for an economic injury, said to

---

**10.** Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Section 324A imposes a similar liability for physical harm suffered by a third person when the actor, in similar circumstances, undertakes to render services for another.

By analogy, we suppose, some courts have allowed recovery under the theory of the Restatement in cases involving economic injury and not physical harm. *Ajax Hardware Mfg. Corp. v. Industrial Plants Corp.,* 569 F.2d 181 (2nd Cir. 1977); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976); *Abel Holding Co., Inc. v. Amer. Dist. Tel. Co.,* 147 N.J.Super. 263, 371 A.2d 111 (1977); *Schwartz v. Greenfield, Stein & Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582 (1977). The *Taylor* case cited above imposed liability for destruction of a house by fire, clearly a case of physical harm to the plaintiff's "thing." That case also imposed the important condition that the defendant's affirmative undertaking be for the benefit of the plaintiff. We are not informed by the *Taylor* opinion whether the relevant cause of action encompasses economic injury.

arise by virtue of a duty imposed in the common law or by the contract between appellee and the Department, to which appellant was not a party.

Holding as we do that appellee's allegations do not set forth a "cause of action," we are not required to address the interesting issue of whether any such claim is a "joint" cause of action to that brought by appellee against the Department, or a cause of action so intimately connected with the other that the two may be joined "under the rule intended to avoid a multiplicity of suits." *Stockyards National Bank v. Maples, supra.*

For the foregoing reasons, we reverse the order of the trial court and remand the cause for severance of the claims against appellant and their transfer to Harris County, the county of appellant's "residence."

PHILLIPS, Chief Justice, dissenting.

It is difficult for me to understand how the majority can hold, as a matter of law, that an architect who is responsible for directing a building project is immune from all tort liability to a contractor whose work he is supervising. This is especially so where the case is one of first impression in Texas and the better reasoned cases in other jurisdictions are to the contrary. Consequently, I dissent from the majority holding.

The specifications for the bulkhead project require the architect to provide general administration of the contract as the Texas Parks & Wildlife Department's representative.

There is no Texas case which decides the question before us, as to whether an architect or engineer owes a duty in tort to a prime contractor, where negligence on the part of the architect or engineer causes the prime contractor economic damage.

Other jurisdictions are divided on this question; however, I find that the "no duty" cases offer no policy justifications as rationale. *See, Harbor Mechanical Inc. v. Arizona Electric,* 496 F.Supp. 681 (D.Ariz. 1980); *Wheeler & Lewis v. Slifer,* 195 Colo. 291, 577 P.2d 1092 (1978); *Valley Landscape*

*Co. v. Rolland,* 218 Va. 257, 237 S.E.2d 120 (1977); *Blecick v. School District No. 18 of Cochise County,* 2 Ariz.App. 115, 406 P.2d 750 (1965).

In my judgment, the cases where a duty has been upheld are the better reasoned cases. In *United States v. Rogers and Rogers,* 161 F.Supp. 132, 135–136 (S.D.Calif. 1958), the court stated:

> Consideration of reason and policy impel the conclusion that the position and authority of a supervising architect are such that he ought to labor under a duty to the prime contractor to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner, . . . Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.

*See also, Conforti v. John C. Morris Associates,* 175 N.J.Super. 341, 418 A.2d 1290 (1980); *Shoffner Industries, Inc. v. W. B. Lloyd Construction Co.,* 42 N.C.App. 259, 257 S.E.2d 50 (1979) *cert. denied* (N.C.1979); *A. R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla.1973).

My decision to join the "pro-duty" line of cases is bolstered by a recent Texas decision. *I. O. I. Systems, Inc. v. City of Cleveland,* 615 S.W.2d 786 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n. r. e.). Here, a contractor brought suit against an architect/engineer and others. The Court held no liability because of no *breach* of duty. But, the Court did assume that a duty of reasonable care and skill does run from an architect/engineer to the contractor: "[the contractor] offered no witnesses to show that city's or Ufer's [the architect] conduct was unreasonable under the circumstances, or not in compliance with the skill and requirements of registered engineers." 615 S.W.2d at 790.

I conclude that appellant did owe a duty of *reasonable care* to appellee. Consequently, a cause of action in tort was stated in appellee's petition and venue is proper in Travis County.

Because I find that appellee properly stated a cause of action in tort, I need not consider appellee's contract claim for venue purposes. Nevertheless, it is well established that a plaintiff, who in good faith asserts joinable claims against the same defendant, can maintain venue upon all those claims in a county where venue is proper as to one claim. *Brazos Valley Harvestore Systems, Inc. v. Beavers*, 535 S.W.2d 797 (Tex.Civ.App.—Tyler 1976, writ dism'd); *Middlebrook v. David Bradley Manufacturing Co.*, 86 Tex. 706, 26 S.W. 935 (1894); 1 McDonald, Texas Civil Practice § 4.38 (rev'd 1981).

Appellee has shown itself to be within subdivision 4 of article 1995. Venue as to Continental's claim against Bernard Johnson is proper in Travis County. Consequently, a severance from Continental's claim against the other defendants is not necessary. Such a decision would serve to further our state's general policy of avoiding a multiplicity of suits. *Boyd v. San Antonio National Bank*, 171 S.W.2d 375 (Tex.Civ.App.—San Antonio 1943, no writ); *Stevens v. Willson*, 120 Tex. 584, 39 S.W.2d 1088 (1931).